867 F.2d 296
 Patricia AYRES, Sheryll Stultz, Ada LaPlaunt, Mildred Wiley,
Oakland County Welfare Rights Organization, on
behalf of themselves and of all others
similarly situated,
Plaintiffs-Appellants,
v.
C. Patrick BABCOCK, Director of the Michigan Department of
Social Services, and the Michigan Department of
Social Services, a state agency,
Defendants- Appellees.
 No. 87-1650.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 13, 1988.
Decided Feb. 6, 1989.
Rehearing and Rehearing En Banc Denied March 24, 1989.
 
 Susan K. McParland, Michigan Legal Services, Detroit, Mich., Robert Gillett (argued), Michigan Legal Services, Ann Arbor, Mich., for plaintiffs-appellants.
 Erica Weiss Marsden (argued), Asst. Atty. Gen., Frank J. Kelley, Lansing, Mich., for defendants-appellees.
 Before KENNEDY, MARTIN and NORRIS, Circuit Judges.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 This appeal concerns the validity of a state policy which denies eligibility for Aid to Families with Dependent Children (AFDC) benefits to parents of children who are placed in a mental health facility or a child caring institution. Plaintiffs appeal the district court's denial of their request for a declaration that the policy is invalid, and an injunction against the termination of benefits.
 
 
 2
 Plaintiffs Patricia Ayres, Sheryll Stultz, Ada LaPlaunt, and Mildred Wiley are mothers of children who have resided in state psychiatric facilities or child caring institutions. The children of the named plaintiffs were placed either in Fairlawn Center or in the St. Vincent-Sarah Fisher Center, or in both. Fairlawn Center is a children's psychiatric hospital operated by the Michigan Department of Mental Health (MDMH). It provides acute, active psychiatric services. The Michigan Department of Social Services (MDSS), which promulgated the AFDC policy at issue in this appeal, provides MDMH with Medicaid funds in the amount of $225 per day for the cost of care and treatment of indigent children admitted to the Center on a long-term basis. This amount was computed to cover all psychiatric services, room and board, incidental needs of the patient (such as clothing and toilet articles), and medical and dental services outside the facility. The St. Vincent-Sarah Fisher Center is a child caring institution which, through contract with MDMH, provides care, maintentance, and supervision of children. Essentially, a child caring institution provides less intensive care and treatment to mentally ill children in a local community setting. The child caring institution is paid $51.75 per day by MDMH for the cost of care of an indigent child.
 
 
 3
 Plaintiffs allege that the average period of treatment ranges from four to seven months; however, it is also alleged that, as a part of each child's treatment, home visits typically take place at least one weekend a month and on holidays.
 
 
 4
 Plaintiffs filed this action on June 23, 1981 against MDSS and its Director, challenging a policy of MDSS which denied eligibility for AFDC grants to the plaintiffs when they placed their children in mental health facilities and child caring institutions. The complaint sought a declaration that the policy was invalid and an injunction blocking termination of benefits. The district court denied plaintiffs' motion for a preliminary injunction, and that denial was subsequently affirmed by this court.
 
 
 5
 Because the provisions of the MDSS policy have changed during the course of the litigation, a history of the policy's development is relevant. The policy was promulgated in 1980 as a part of the implementation of the AFDC program in Michigan. As will be set out later, under federal standards, a family may receive AFDC benefits if a needy child is living in the home; by regulation, a home exists so long as the responsible relative exercises care and control of the child, even though either is temporarily absent from the customary home setting. However, there is no federal definition of "temporary." Thus, MDSS published a definition of "temporary absence," divided into two parts, to further delineate eligibility for AFDC benefits. At the inception of the litigation, the policy was found in the MDSS Assistance Payments Manual, Item 207 (APM 207), which defined "temporarily absent" as follows:
 
 
 6
 A temporarily absent person is considered to be in the home for purposes of ADC eligibility.
 
 
 7
 The absence of an ADC group member is TEMPORARY IF:
 
 
 8
 1. the location of the absent person is known, and
 
 
 9
 2. there is a definite plan for the return of the absent person to the home, and
 
 
 10
 3. the absent person shared the home with the ADC group prior to the onset of the absence (newborn and unborn children are considered to have lived with the ADC group), and
 
 
 11
 4. the absence has lasted or is expected to last for 30 days or less unless the person is hospitalized or away from home for training or education.
 
 
 12
 Persons who are in the following placements are NEVER considered temporarily absent:
 
 
 13
 . Nursing home providing skilled or intermediate care;
 
 
 14
 . Special MR nursing home certified by the Department of Public Health;
 
 
 15
 . Department of Mental Health facility, providing active psychiatric care or a facility for the mentally retarded providing ICF/MR nursing care;
 
 
 16
 . County medical care facility providing skilled or intermediate care;
 
 
 17
 . Hospital long term care unit;
 
 
 18
 . Alternative Intermediate Services (AIS) Home;
 
 
 19
 . Home for the Aged;
 
 
 20
 . Adult foster care facility;
 
 
 21
 . Child caring institution (including Departmental Training Schools);
 
 
 22
 . Licensed child foster care home;
 
 
 23
 . Private mental health facility.
 
 
 24
 Thus, the first part of APM 207 set out a general and inclusory test providing four criteria to define "temporary," the most important of which required that the absence from the home be less than thirty days, unless the person is hospitalized or away from home for training or education. The second part specifically excluded from the definition of "temporary" certain placements in facilities, including child caring institutions and mental health facilities.
 
 
 25
 On April 3, 1984, the district court issued an opinion granting MDSS's motion for summary judgment, upholding APM 207 as in compliance with the requirements of Title IV-A of the Social Security Act, 42 U.S.C. Sec. 601 et seq., the Equal Protection Clause, and the Due Process Clause. On January 28, 1986, this court reversed that decision, in an opinion which concluded that the policy was invalid because of an "internal inconsistency" in its language and structure. We reasoned that the plaintiffs arguably qualify as "temporarily absent" under the listed criteria in the first part of the policy, but would be excluded under the categorical exclusions of the second part, and, with no indication of which part was to have precedence, the policy was invalid.
 
 
 26
 In response to our mandate, MDSS revised its policy in March 1986. The resulting policy, which is set forth in Program Eligibility Manual Item 210 (PEM 210), defines "temporary absence" in the following manner:
 
 
 27
 Living with others means sharing a home with another person(s), except for temporary absences. A temporarily absent person is considered to be in the home.Absence of a person is temporary if:
 
 
 28
 . the location of the absent person is known; and
 
 
 29
 . there is a definite plan for the return of the person to the home; and
 
 
 30
 . the absent person shared the home with the group prior to the onset of the absence (newborn and unborn children are considered to have lived with the group); and
 
 
 31
 . the absence has lasted or is expected to last no more than 30 days, unless the person is absent because of hospitalization, or for ADC only, the person is absent for the purpose of training or education.
 
 
 32
 The absence of any person placed (either voluntarily or otherwise) in a residential facility other than a hospital is presumed to last more than 30 days, unless the Department receives a signed statement from the facility including an expected date of discharge which is 30 days or less from the date of admission. The period of absence of persons placed in such facilities begins with the date of admission and ends with the date of discharge to the home. The absence is considered to be continuing during visits to the home and is not interrupted by admission to a hospital from one of the residential facilities. Residential facilities provide 24-hour care, maintenance, and supervision of the residents. Examples of such facilities are:
 
 
 33
 . a long-term care facility;
 
 
 34
 . an adult foster care home;
 
 
 35
 . a home for the aged;
 
 
 36
 . a licensed child foster care home;
 
 
 37
 . a child caring institution; and
 
 
 38
 . a mental health facility.
 
 
 39
 Thus, PEM 210 retains the four criteria from the first part of the former policy, but goes on to provide that a placement in a "residential facility," other than a hospital, will be presumed to last more than thirty days, in the absence of a qualifying statement to the contrary.
 
 
 40
 Plaintiffs asked the district court to declare the revised policy invalid and to enjoin its enforcement. In a memorandum opinion dated March 30, 1987, the district court treated the motion as one for summary judgment, and held that the revised policy was not contrary to the Sixth Circuit mandate. The district court declined to reconsider the statutory and constitutional issues.
 
 
 41
 Plaintiffs now appeal the district court's decision with respect to the validity of PEM 210. They mount a four-pronged attack on the revised policy, arguing that (1) MDSS did not comply with our mandate on remand; (2) PEM 210 is inconsistent with the federal standard of eligibility; (3) the policy creates a conclusive presumption that is repugnant to the Due Process Clause; and (4) a classification based on mental illness is created which offends the Equal Protection Clause.
 
 
 42
 The state did comply with our mandate on remand. Our 1986 order plainly stated that APM 207 was "internally inconsistent on its face," and proceeded to an abstract discussion of the structure and operation of the policy. The analysis did not reach beyond a determination that APM 207 potentially could contradict itself, and it is patently obvious that the issue of whether, in the circumstances of this case, categorical exclusions are proper was never addressed. We did not address the policy "as applied." Plaintiffs' argument ignores explicit language in the order reserving the substantive issues from consideration: "Here the plaintiffs argue the Michigan policy is contrary to the Social Security Act and violates their rights to due process and equal protection under 45 C.F.R. Sec. 233.10 and the Fourteenth Amendment. To decide the case in its present posture, we need not consider these arguments." It is obvious that our earlier directive was limited solely to the structural deficiencies in APM 207.
 
 
 43
 Plaintiffs also argue that the definition of temporary absence in PEM 210 impermissibly departs from the federal standard for "dependent child" under the Social Security Act and applicable regulations, and is thus invalid under the Supremacy Clause. The AFDC program is a joint federal-state effort administered by the state, subject to federal statute and regulation. Federal participation in state AFDC programs is conditioned upon the state's offering benefits to all persons who are eligible under federal standards; the state must therefore provide benefits to all individuals who meet the federal eligibility standards of "dependent child," and who are "needy" under state standards. Burns v. Alcala, 420 U.S. 575, 578, 95 S.Ct. 1180, 1183, 43 L.Ed.2d 469 (1975); see Curry v. Dempsey, 701 F.2d 580, 582 (6th Cir.1983). The Social Security Act defines "dependent child" as follows:
 
 
 44
 The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training).
 
 
 45
 42 U.S.C. Sec. 606(a).
 
 
 46
 The federal standard for "dependent child" is further refined by regulations promulgated by the Secretary of Health and Human Services, which define the phrase "living with [a specified relative] in a place of residence maintained ... as his ... own home." The regulation states:
 
 
 47
 A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting. Within this interpretation, the child is considered to be "living with" his relative even though:
 
 
 48
 (1) he is under the jurisdiction of the court (e.g., receiving probation services or protective supervision); or
 
 
 49
 (2) legal custody is held by an agency that does not have physical possession of the child.
 
 
 50
 45 C.F.R. Sec. 233.90(c)(1)(v)(B).
 
 
 51
 Because of the complexity of an undertaking like the AFDC program, Congress cannot be expected to legislate on every detail of eligibility. Thus, the states are accorded a limited degree of latitude in interpreting federal standards of eligibility and in imposing eligibility conditions upon recipients. MDSS, in administering the AFDC program in Michigan, adopted PEM 210 to define when an absence is to be considered "temporary." Plaintiffs perceive a conflict between the state's definition of "temporary absence" and the federal standard. It is argued that the categorical exclusion of children in mental health facilities and child caring institutions contravenes both the language and purpose of the Act. We disagree.
 
 
 52
 Although states retain considerable discretion in setting standards of "need" and levels of benefits, a state "may not deny aid to persons coming within [the federal standard of eligibility.]" See Burns, 420 U.S. at 580, 95 S.Ct. at 1181. Thus, a state's interpretation of who is a "dependent child" for purposes of AFDC eligibility must be a reasonable and non-arbitrary construction of the federal standard, and must not result in inequitable treatment of individuals or groups. 45 C.F.R. Sec. 233.10(a)(1) (1987); see Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); French v. Mansour, 834 F.2d 115 (6th Cir.1987). The analysis of whether a state restriction on eligibility impermissibly departs from the federal standard of eligibility "is no different from that used in solving any other problem of statutory construction," and the "words [of the federal standard] are to be given their ordinary meaning in the absence of persuasive reasons to the contrary." Burns, 420 U.S. at 580-81, 95 S.Ct. at 1184-85. It is apparent that the federal standard of eligibility ultimately turns on "assumption and continuation of responsibility for day to day care of the child." Although plaintiffs argue strenuously that the occurrence of regular home visits demonstrates that the absence is "temporary," only after it is established that the specified relative has care and control of the child is the "temporariness" of any absence material to the analysis. In the present case, state statutes and regulations place responsibility for the child's care, supervision, and control with the state institution. It follows that because the type of care contemplated by the federal regulation more nearly resembles the day-to-day supervision and control provided by the institutions than the supervision and control exercised by a parent during brief visits home, excluding children in residential placements is a reasonable interpretation and construction of the federal standard, even though a parent can be expected to incur expenses on behalf of the child during home visits. Accordingly, PEM 210 does not depart impermissibly from the federal standard.
 
 
 53
 Plaintiffs also propound constitutional arguments grounded on the Due Process and Equal Protection Clauses. They invoke the conclusive presumption doctrine to allege a violation of due process, arguing that a state agency may not create a classification which conclusively presumes that a fact is true without giving an affected individual an opportunity to disprove the presumed fact. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Here, it is alleged that the presumption that the placement in a residential facility will last longer than thirty days, together with the presumption that the length of treatment equals the length of absence, create an invalid presumption, which is essentially irrebuttable because residents invariably stay for periods longer than thirty days. However, the rational basis test is the applicable standard for cases involving classifications in the distribution of welfare benefits. Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Although Salfi dealt with a congressional presumption, its rationale is equally applicable to state regulations. The legitimate rationale articulated by the state is that, if a state is forced to provide benefits for the care of the same recipients through both AFDC and its mental health programs, the state might conclude it has no alternative but to terminate its mental health programs for these kinds of recipients.
 
 
 54
 Likewise, plaintiffs' equal protection argument is without merit. Plaintiffs assert that PEM 210 creates a classification based on mental illness in that persons who are absent because of placement in schools or hospitals are not denied benefits. Relying upon City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), plaintiffs argue that the historical discrimination suffered by the mentally ill, like that suffered by the mentally retarded, should be an important factor in the equal protection analysis. However, PEM 210 makes a distinction not between the mentally ill and non-mentally ill, but between those institutionalized in certain placements and those not so institutionalized. See Schweiker v. Wilson, 450 U.S. 221, 231-33, 101 S.Ct. 1074, 1081-82, 67 L.Ed.2d 186 (1981). Thus, the distinction is based upon institutionalization, not mental illness, and the pertinent inquiry is whether the classification advances legitimate goals in a rational manner. Id. at 234, 101 S.Ct. at 1083. We have concluded above that the state has provided the requisite rationale.
 
 
 55
 For the foregoing reasons, the judgment of the district court is affirmed.