Ashley EDDLEMAN, et al., Plaintiffs,

v.

CENTER TOWNSHIP OF MARION COUNTY, and William R. Smith, in his official capacity as Center Township Trustee, Defendants.

No. IP 89–1030–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 13, 1989.

Richard Waples, ICLU and Fran Quigley, White & Johnson, Indianapolis, Ind., for plaintiffs.

Allen Smith and Office of the Atty. Gen., Indianapolis, Ind., for defendants.

CLASS ACTION

TINDER, District Judge.

### MEMORANDUM OPINION DISCUSSING CONSTITUTIONALITY OF INDIANA CODE § 12–2–1–5(a)

This case is a class action suit, brought by a class of indigent citizens against Center Township of Marion County and William R. Smith, in his official capacity as Center Township Trustee. The plaintiff's class is defined as those persons who are, or may be in the future, residents of Center Township, Marion County, Indianapolis, Indiana, and who would be eligible for poor relief from the township but for the three and one year durational residency requirements mandated by section 12–2–1–5(a) of the Indiana Code. Plaintiffs seek declaratory and injunctive relief from the enforcement of that statutory clause on grounds that the law is unconstitutional both on its face and as applied to the plaintiffs' class.

Indiana Code § 12–2–1–5(a) limits the receipt of township welfare relief to those indigent persons who satisfy a durational residency requirement.[1] In counties with a population of 100,000 or more,[2] an applicant must have resided in the state of Indiana for three continuous years and in the county for one continuous year in order to qualify for poor relief.

Although this case could have been disposed of with the signing of the accompanying consent decree, several factors sug-

---

1. Indiana Code § 12–2–1–5(a) provides, in pertinent part, as follows:

 In counties having a population of one hundred thousand (100,000) or more, the sole residence requirements shall be one (1) continuous year in the county and three (3) continuous years in the state, if the applicant applies to the trustee of the township in which the applicant resides.

Ind.Code Ann. § 12–2–1–5(a) (Burns 1988).

2. According to the 1980 Census, Indiana counties with a population of 100,000 or more are: Allen, Delaware, Elkhart, Lake, LaPorte, Madison, Marion, Porter, St. Joseph, Tippecanoe, Vanderburgh, and Vigo counties.

gest that this memorandum opinion is necessary for an efficient and fair disposal of the underlying problem this case presents. First, this case, unlike many that are filed in federal court, raises significant constitutional questions that justify an extended analysis and discussion by an Article III court. Second, the law controlling this case is, by modern standards, old and well-established, yet remains obscure to the population in general and to Indiana township trustees in particular. As a result, the risk of repetitive litigation resulting from sporadic enforcement of the statute is significant. Although the wheels of justice have turned quickly in this case, the denial of one's constitutional rights, even for a day, is nonetheless illegal. Hopefully, this memorandum opinion will prevent future township trustees from unwittingly violating the constitutional rights of those they are to serve, thereby, obviating the need for attorneys and the federal bench to revisit an area of law that is by now well-travelled.

This law begins with the supreme law of the land—the Constitution of the United States of America. The fourteenth amendment to the Constitution contains a clause that is commonly referred to as the "equal protection clause." This clause prohibits the states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The equal protection clause was originally intended to serve as a means for erasing the vestiges of slavery from the Nation's legal and political system. The clause has developed into a powerful tool by which laws that classify persons into arbitrary or invidious groups can be struck down.

Whenever testing the constitutionality of a state statute under the equal protection clause, courts analyze three factors concerning the law: the classes established by the law, the interests of the persons affected by the classification, and the importance of the governmental interest the statute was intended to further. How closely the courts will analyze or scrutinize these factors is determined by the nature of the classification at issue. Whenever a statute classifies people into groups, courts will subject the statute to "low-level" scrutiny, which requires only that there be a "rational basis" for the law. Statutes that classify persons on the basis of inherently suspect criteria (i.e., the color of one's skin) and statutes that infringe on the exercise of a fundamental right are subjected to a higher level of judicial scrutiny—"strict scrutiny." Under strict scrutiny, a statute can survive only if it is necessary to further a compelling governmental interest. Both plaintiffs and defendants have agreed that section 12–2–1–5(a) must be subjected to strict scrutiny and that it fails this test. Prior Supreme Court precedent and my own analysis of this statute lead me to this same conclusion.

Over twenty years ago, the Supreme Court, in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), was faced with a constitutional question almost identical to the one presented to me today. In *Shapiro*, the Supreme Court invalidated several states' statutes and a District of Columbia statute that conditioned the receipt of public welfare on satisfaction of durational residency requirements[3] on grounds that the statutes violated the equal protection clause of the fourteenth amendment.[4] The Court found that the

3. Each of these statutes required a welfare applicant to have resided within the state (or District of Columbia) for one year immediately prior to the date of application. *Id.* at 622 n. 2, 624 n. 3, & 625 n. 5, 89 S.Ct. at 1325 n. 2, 1325–26 n. 3, & 1327 n. 5.

4. Because the fourteenth amendment does not apply to the Federal Government, the Court struck down the District of Columbia statute as violative of the due process clause of the fifth amendment. This clause has been used to invalidate most laws of the federal government

that would have violated the equal protection clause of the fourteenth amendment if enacted by the states. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (applying *Brown v. Board of Education*'s prohibition on segregated schools to schools in the District of Columbia). I say "most laws of the federal government" because the two clauses are not clearly coextensive. The Supreme Court, in dicta, has suggested that federal laws that burden aliens as a class may survive equal protection analysis even though similar state statutes would fail. This different outcome is based on the unique

effect of these durational residency requirements was the creation of "two classes of needy families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction." *Id.* at 627, 89 S.Ct. at 1327. The Court noted that the right to interstate travel was a fundamental right protected by the Constitution [5], and that the denial of basic welfare benefits to those who had recently exercised that right constituted a clear penalty on the right to interstate travel. The Court concluded that "any classification which serves to penalize [6] the exercise of [the constitutional right to interstate travel], unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Id.* at 634, 89 S.Ct. at 1331.

The defendant-states proffered to the Court a variety of governmental interests that were alleged to be compelling enough to justify the classification. After discussing each of them in the opinion, the Court dismissed them as either not constitutionally-permissible governmental objectives, or, even if permissible objectives, not compelling enough to justify the suspect classification. *Id.* at 627, 89 S.Ct. at 1327–28. As a result, the statutes were struck down as violative of the equal protection clause.

*Shapiro* has been consistently followed over the past twenty years. In fact, a variety of other durational residency requirements have been struck down by the Supreme Court as violative of equal protection in reliance on *Shapiro*. In *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), the Court ruled that states may not deny welfare relief to aliens who are legally present in this country simply because they have not been in the country for a requisite duration. In *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1971), the Court struck down Tennessee's durational residency requirements for voting on grounds that those who have recently exercised the fundamental right to interstate travel may not constitutionally be denied the fundamental right to vote. In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the Court held that an Arizona county's denial of free non-emergency medical care to indigents who did not meet the county durational residency requirement was unconstitutional.

*Shapiro* has already been used once to strike down section 12–2–1–5(a). In *Major v. Van DeWalle*, No. 4169 (N.D.Ind.1970), a three judge panel temporarily enjoined (Order & Memorandum, Dec. 10, 1969), and then permanently enjoined (Decree, Mar. 2, 1970), the enforcement of Indiana Code § 12–2–1–5(a) by the Portage Township Trustee in St. Joseph County, Indiana.[7] That panel, following *Shapiro*, strictly scrutinized the statute. The panel concluded that it did, indeed, create a classification

---

federal interest in immigration. *See Nyquist v. Mauclet*, 432 U.S. 1, 7 n. 8, 97 S.Ct. 2120, 2124 n. 8, 53 L.Ed.2d 63 (1977).

5. Although the Court acknowledged that the textual basis for this right was still undiscovered, the Court clearly pointed out that this right does exist. *Shapiro*, 394 U.S. at 630 n. 8 and 642–43, 89 S.Ct. at 1329 n. 8, and 1335–36. *See also, United States v. Guest*, 383 U.S. 745, 758, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966) ("freedom to travel throughout the United States has long been recognized as a basic right under the Constitution"); *Passenger Cases*, 48 U.S. (7 How.) 283, 492, 12 L.Ed. 702 (1849) (Taney, C.J.); *Crandall v. Nevada*, 73 U.S. (6 Wall.) 35, 43–44, 18 L.Ed. 744 (1867); and *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941).

6. The *Shapiro* Court never did clearly define what it meant by the word "penalize." At one

point, the Court suggested that the statute's classification must actually *deter* interstate travel in order to invoke strict scrutiny analysis; at another point, the Court suggested that statutes that merely *burden* or *penalize* the exercise of that right would be subjected to strict scrutiny. *Id.* at 629 & 634, 89 S.Ct. at 1328–29, & 1331. In *Dunn v. Blumstein*, the Court made clear that actual deterrence is not required. Any classification that penalizes the exercise of the fundamental right to interstate travel will be subjected to strict scrutiny. 405 U.S. 330, 339–40, 92 S.Ct. 995, 1001–02.

7. That panel found the statute to be facially unconstitutional when it issued the temporary injunction. In the final injunction, the panel was unclear as to whether it was striking the statute down on its face or only as applied.

on the basis of the exercise of the constitutionally protected right to interstate travel. This classification penalized the exercise of that fundamental right and could not be justified as necessary to further a compelling governmental interest.

 Applying the law as developed in *Shapiro* and subsequent cases to the facts of this case, I conclude that § 12-2-1-5(a) does facially violate the equal protection clause of the fourteenth amendment. Like the statute in *Shapiro*, this statute classifies poor relief applicants according to the duration of their residency in the State and the county. As a result, applicants who would otherwise be eligible for poor relief are being denied this relief only because they have recently exercised their constitutional right to interstate travel.[8]

Withholding poor relief from these plaintiffs imposes a tremendous cost on the exercise of that right. The poor relief that the township trustee is statutorily authorized to dispense can fairly be characterized as constituting the basic necessities of life. Ind.Code § 12-2-1-20(a) provides:

It shall be the duty of the overseer of the poor, on complaint made to him that any person within his township is lying sick therein or in distress, without friends or money, so that the person is likely to suffer, to examine into the case of said person and grant such temporary relief as may be required.

Ind.Code § 12-2-1-10(b) provides:

Public aid by an overseer of the poor may include ... the following items: Food, including prepared food, clothing, shelter, light, water, fuel for heating and

---

**8.** Although the parties do not raise the following points, I am compelled to point out a few technicalities concerning the statute's effect on various types of plaintiffs. The "three years in the state" residency requirement, by definition, applies only to those persons who have recently travelled interstate—i.e., from outside of Indiana into Indiana. The clause is facially unconstitutional. On its face, it groups poor relief applicants into two classes based only on whether the applicant has recently travelled interstate. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, clearly mandates that this clause be struck down as unconstitutional.

The "one year in the county" residency requirement applies not only to those persons who have recently travelled interstate, but also to those persons who have travelled from one Indiana county to another without ever leaving the state of Indiana. This number is not insignificant. *See Dunn v. Blumstein*, 405 U.S. at 335 n. 5, 92 S.Ct. at 999 n. 5 (during the period 1947 to 1970, 3.2% of the nation moved from one county to another *intra* state each year). Indeed, the named plaintiffs in this case include the Eddleman family who have moved from Marion County to Mooresville, Indiana, and then back to Marion County within a span of a few months—all without ever leaving the state.

As applied to those plaintiffs who have moved into Marion County from interstate travel, the one year residency requirement is unconstitutional. *See Memorial Hospital v. Maricopa County*, 415 U.S. at 256 & n. 9, 94 S.Ct. at 1081 & n. 9 (the State may not accomplish through a county residency requirement what it may not constitutionally accomplish itself through a state residency requirement).

As applied to those plaintiffs, represented by the Eddlemans, who have moved into Center Township from other Indiana counties, the one year residency requirement is tested under a different, more lenient standard. Because the U.S. Constitution does not deem intrastate travel to be a fundamental right, classifications on this basis can only be subjected to low-level scrutiny under federal equal protection analysis. I simply note, without deciding, that there appears to be no rational basis for denying poor relief only to those persons who have travelled intrastate. *Memorial Hospital v. Maricopa County*, 415 U.S. at 256 n. 9, 94 S.Ct. at 1081 n. 9; *Cf. Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (invalidating, on equal protection grounds, Alaska's oil revenue rebate system as lacking a rational basis). Even if the statute could pass low-level scrutiny with respect to these particular plaintiffs, the Indiana State Constitution might provide some protection for those Indiana citizens who have recently travelled intrastate. Ind. Const. art. 1, § 23 ("The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."). Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind.L.Rev. 575 (1989).

However, section 12-2-1-5(a) does not distinguish between interstate and intrastate travellers, nor do defendants argue the Indiana General Assembly intended this result. Therefore, I can only strike out the one year county residency requirement entirely or not at all. As a result, I need not address the points raised in this footnote in order to declare the one year residency requirement unconstitutional. It is unconstitutional because it denies poor relief to, among others, those who have recently exercised their constitutional right to interstate travel, and cannot be used to deny poor relief to anyone.

cooking, household supplies which shall include first aid and medical supplies for minor injury and illness, household necessities which shall include basic and essential items of furniture and utensils, heating and cooking stoves, and transportation to seek and accept employment.

The poor relief in this case is quite similar to the relief that was being denied the plaintiffs in *Shapiro*—"food, shelter, and other necessities of life." *Shapiro*, 394 U.S. at 627, 89 S.Ct. at 1327. The benefits in this case are of greater importance than the non-emergency medical care that was being refused the plaintiffs in *Memorial Hospital*, yet that refusal was found to constitute a "penalty" on the right to interstate travel. While not every denial of a government benefit to those who have travelled interstate will constitute a "penalty" on the right to travel[9], withholding poor relief in this case is indeed a "penalty" on the exercise of that right.

This is not to say that a classification that serves to "penalize" interstate travel is "per se" unconstitutional. Rather, this finding simply means that those seeking to uphold the statute must now prove the statute furthers a compelling governmental interest that cannot be achieved without the statute.[10] In this case, the Center Township Trustee offers no governmental interest to justify the statute.[11]

As a result, I must conclude that Indiana Code § 12-2-1-5(a) is facially unconstitutional as violative of the equal protection clause of the fourteenth amendment. In striking down this statute, it is important to bear in mind what I have not done. I have not struck down the residency requirements that apply to counties with less than 100,000 persons. Only the part of the statute that deals with the residency requirement in counties having a population of 100,000 or more is invalid. This is limited to the first sentence of § 12-2-1-5(a). But, as the statute itself states, this sentence is also the "sole residence requirement[ ]" for poor relief in those counties.

■ In reaching this decision, I am aware of the tremendous fiscal burdens that this decision and other recent court decisions have placed on Center Township. As an Article III court, however, it is my duty to review the laws of both the Federal and state legislatures for constitutional infirmities. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). It is basic to the preservation of our constitutional form of government that when a state law conflicts with the Constitution, the former must yield to the later. Today's decision does not mandate the Township Trustee to care for the indigent[12]; nor does it require

9. *See supra* note 6. *Compare Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322 with *Vlandis v. Kline*, 412 U.S. 441, 452–53 & n. 9, 93 S.Ct. 2230, 2236–37 & n. 9, 37 L.Ed.2d 63 (dicta suggesting that states may constitutionally place durational residency requirements on college students seeking eligibility for lowered in-state tuition rates) and *Starns v. Malkerson*, 326 F.Supp. 234 (D.C.Minn.1970), *summarily aff'd*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

10. In reality of course, this burden on the government is almost always insurmountable. Only once has the Supreme Court been able to find a governmental interest so compelling that it justified the otherwise unconstitutional classification. *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944) (upholding the war-time internment of Japanese–Americans). That case has been criticized by judges and legal scholars perhaps more often than any other decision in this century.

11. As footnote 10 suggests, even if the trustee had chosen to proffer a governmental interest, it

is very unlikely that it would have been compelling enough to justify the suspect classification. In *Shapiro*, the defendant-states provided a plethora of governmental interests, but each was dismissed by the Court as either an impermissible interest (e.g., preventing the influx of indigents into the state) or an interest not compelling enough to justify the statute's classification (e.g., facilitating budget planning or preserving government resources). In addition, the State of Indiana has been served with notice of this lawsuit, initially entered a notice of appearance, but then withdrew its notice of appearance. In withdrawing its appearance, the state of Indiana stated that it "has no legal interest." This provides further assurance to me that there is indeed no compelling governmental interest furthered by the statute.

12. The Constitution does not require the government to provide welfare benefits. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 33, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16 (1973).

the Trustee to spend more money caring for the indigent than he can practically or legally raise through property taxes or bond issues.[13] Rather, the mandate to care for the indigent is one that originated with the legislature of this state. This decision merely orders the trustee to perform his statutorily-mandated duties in a fashion that comports with the United States Constitution. If the trustee is required to care for the poor within the township, he can no more deny care to those who have recently exercised their fundamental right to travel than he can deny care to those who are of a race different from his own. The later form of denial would, I trust, strike us all as a clear violation of the equal protection clause of the Constitution. It is my job today to declare that the former is also a violation of the Constitution.

For all the above reasons, and to the extent discussed above, Indiana Code § 12–2–1–5(a) is decreed, ordered, adjudged, and declared unconstitutional, and the defendants are permanently enjoined from enforcing its provisions.

## CONSENT DECREE

Upon agreement by the parties and review of this court of the pleadings and the parties' stipulations, this consent decree is entered as the final order, judgment and injunction in this case.

1. This court has jurisdiction of the cause pursuant to 28 U.S.C. §§ 1331 and 1343, to hear plaintiffs' claims under the United States Constitution and 42 U.S.C. § 1983.

2. The named plaintiffs have standing and are proper representatives of a class of plaintiffs. The class is defined and certified as all persons who are, or may be in the future, residents of Center Township, Marion County, Indianapolis, Indiana, and, but for the three and one year durational residency requirements contained in IC 12–2–1–5(a), are eligible for public assistance from the Center Township Trustee.

3. The class consists of numerous persons and is fluid with many new individuals joining the class upon gaining residency in Center Township. Because this is a large and fluid present and future class, joinder of individual claims is impracticable.

4. The following question of law and fact are common to the class:

(i) whether the enforcement of the three and one year residency requirements contained in IC 12–2–1–5(a) deprive the plaintiffs and the class of their right to equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution.

5. The claims of the representative plaintiffs are typical of the claims of the class; the anticipated defense(s) of the defendants to the claims of the plaintiff are expected to be consistent with the defense defendants would raise to the claims of the class.

6. The representative parties will fairly and adequately protect the interest of the class because they have no interests which are antagonistic to the interests of other class members and because they are represented by counsel experienced in this type of litigation.

7. The parties opposing the class have acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

8. The provisions of Indiana Code 12–2–1–5(a) which predicate township trustee poor relief assistance on three year continuous residency in Indiana and one year continuous residency in the county for those counties with populations of 100,000 or more persons is unconstitutional on its face and unconstitutional as applied to the plaintiff class. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Major v. Van Dewalle*, No. 4169, slip op. (N.D.Ind.1970) (three judge

---

**13.** The Township Trustee and Board of Commissioners have various revenue raising mechanisms available under Title 12, Article 2 of the Indiana Code.

panel). These durational residency requirements violate the equal protection rights of class members by penalizing their fundamental right to interstate travel.

9. The plaintiffs are entitled to judgment and an injunction in their favor prohibiting the defendants from enforcing the durational residency provisions of Indiana Code 12–2–1–5(a) in those counties with populations of 100,000 or more.

10. The issue of plaintiffs' entitlement to an award of costs and attorneys fees will be determined by the court upon plaintiffs' petition for such an order.

It is therefore DECLARED that the provisions of Indiana Code 12–2–1–5(a) that require three years continuous residency in Indiana and one year continuous residence in a county as a prerequisite for poor relief assistance form a township trustee are unconstitutional. It is further ORDERED that defendants in this cause, their successors and their agents and employees and all those acting by and through them are PERMANENTLY ENJOINED from enforcement of the durational residency provisions of Indiana Code 12–2–1–5(a).

ALL OF WHICH IS ORDERED this 13th day of October 1989.

Agreed To:

/s/ Allen N. Smith, Jr.

Attorney for Defendants

/s/ Richard A. Waples

Attorney for Plaintiffs

/s/ Fran Quigley,

Attorney for Plaintiffs