INDIANA DEPARTMENT OF PUBLIC WELFARE and Suzanne L. Magnant, In Her Official Capacity as Administrator of the Indiana Department of Public Welfare, Appellant–Respondents,

v.

Doris HUPP and Melissa Branaman, Individually and on behalf of all other persons similarly situated, and Judy Wheat, Appellee–Petitioners.

No. 60A01–9206–CV–174.

Court of Appeals of Indiana, First District.

Dec. 29, 1992.

Transfer Denied March 2, 1993.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellant-respondents.

Thomas M Frohman, Jamie Andree, Legal Services Organization of Indiana, Inc., Bloomington, for appellee-petitioners.

BAKER, Judge.

Today we are presented with the question of whether the policy of terminating a household's AFDC benefits for a child who has been removed from his or her home under a court-issued probable cause detention order but before the child has been adjudicated a Child in Need of Services (CHINS) violates federal law.[1]

Alleging the administrative policy of respondent-appellant Division of Family and Children (the Division)[2] was contrary to federal law,[3] petitioner-appellees Doris Hupp and Judy Wheat (the parents) sought injunctive and declaratory relief pursuant to 42 U.S.C. § 1983. The parents complained the Division improperly terminated their AFDC eligibility after their children were removed from their homes but before the children had been adjudicated CHINS. Prior to an adjudication, contended the parents, their children's absences were temporary, and temporary absences did not affect AFDC eligibility. The parents also stressed that despite their children's absences, they remained financially responsible for maintaining homes to which their children could return and, if they had visitation rights, they were responsible for the expenses of those visits. These responsibilities, the parents argued, were sufficient to maintain AFDC eligibility while their children were detained under CHINS probable cause detention orders.

The Owen Circuit Court certified the parents' actions as a state-wide class action and added petitioner-appellee Melissa Branaman as an intervening class representative. After the parties filed cross-motions for summary judgment, the court entered judgment in the parents' favor and enjoined the Division from reducing or terminating a household's AFDC benefits based solely on a CHINS probable cause detention order. The Division was also required to identify all members of the class and notify them of the court's decision. The court concluded the Division may not reduce or terminate AFDC benefits until a child's placement outside of the home is continued following a CHINS adjudication and entry of a dispositional order. The Division now appeals the injunction and order.

For the reasons we discuss below, we disagree with the parties' reliance on Indiana's CHINS legislation to determine when AFDC eligibility ceases. A household's AFDC eligibility is contingent on the parent or relative caretaker exercising responsibility for the child's care and control, but that responsibility is not a factor in a CHINS adjudication. Because the CHINS and AFDC requirements do not parallel each other, using a CHINS proceeding to determine AFDC eligibility is inappropriate. With this in mind, we now address the reduction or termination of AFDC benefits in this case.

---

1. Oral argument was heard in this case in Indianapolis on November 17, 1992.

2. Effective January 1, 1992, Indiana restructured the Department of Public Welfare (the DPW). The DPW has been renamed the Division of Family and Children, and it is charged with the administration and supervision of Indiana's public welfare activities. IND.CODE 12–13–1–1. Throughout this opinion, we will refer to the department under its new name.

3. The parents' complaint included a separate count challenging the Division's administrative decision to reduce or terminate their AFDC benefits pursuant to the procedures set forth in the Administrative Adjudication Act. IND.CODE 4–21.5–1–1 *et seq.* That count was not included in this class action, and it is not before this court.

## FACTS

The parties stipulated to the trial court the facts relevant to the reduction or termination of their AFDC benefits. In each case the change in benefits was preceded by a CHINS probable cause detention order. We are not told what events led to the allegations and detentions and those allegations are not challenged here. The facts, as stipulated, follow.

### Doris Hupp

Doris Hupp lived in Monroe County, Indiana, with her six minor children. She received $522.00 in AFDC benefits for herself and her children.

On June 30, 1989, the Monroe County Division removed all six children from Hupp's home under allegations of neglect and abuse. That same day, the Monroe Circuit Court, Juvenile Division, conducted a detention hearing and found there was probable cause to believe the children were CHINS. The court authorized the children's continued detention in foster care.

On July 5, 1989, Hupp's AFDC caseworker at the Division proposed discontinuing Hupp's AFDC grant because of the removal of her children under the CHINS probable cause detention order. Hupp was notified her AFDC and Medicaid would be discontinued effective August 1, 1989, and repayment would be required for the benefits she had received in July 1989. Hupp appealed the proposed action within 10 days of receiving notice, which enabled her to continue receiving benefits in the amount of $522.00 per month pending the disposition of her appeal.*

On July 27, 1989, the juvenile court held an additional detention hearing and returned Hupp's two oldest children to her. The court also ordered unsupervised visitation between Hupp, her children, and the children's father. With the return of two children, the Division amended its proposed action from complete discontinuation of Hupp's AFDC to a reduction of her AFDC to $288.00 per month effective July 1, 1989.

Hupp again appealed the Division's proposed reduction of benefits, but on August 15, 1989, a Division administrative law judge (ALJ) upheld the Division's decision. Hupp appealed that decision which enabled her to receive the entire $522.00 in benefits through September 1989. As of August 15, 1989, Hupp was paying $250.00 per month to maintain her residence in Owen County, and her four youngest children visited her there three days a week. Hupp paid for meals and items incidental to those visits. In addition to working with her caseworker, she attended meetings at the Salvation Army, enrolled her children in school, obtained a doctor for her children, and purchased clothes for them.

On August 24, 1989, Hupp was reunited with her youngest child. By October 13, 1989, however, Hupp had been incarcerated and the juvenile court again removed Hupp's children from her home. By order of the juvenile court, two children were returned to Hupp's home on December 29, 1989, another returned on January 12, 1990, and Hupp gave birth to a seventh child on February 17, 1990. Three days later, on February 20, 1990, the Division dismissed the CHINS petition and the remaining three children went home.

Hupp received AFDC benefits in the amount of $522.00 per month through September 1989. After losing her appeals challenging the Division's reductions, Hupp became liable for an overpayment of $234.00 in benefits in both July and August, and $176.00 in September. Hupp received a monthly payment of $346.00 from October through February, but she was eventually found liable for an overpayment of the full $346.00 paid in November and December and for $58 paid in January. Her benefits increased to $405.00 in March 1990, and, with the homecoming of all of her children, Hupp's AFDC benefits increased to $580.00 in April 1990.

### Judy Wheat

Judy Wheat resided in French Lick, Indiana, with her six minor children. Wheat received $522.00 in AFDC benefits.

On July 12, 1989, the Orange County Division took Wheat's children into custody pursuant to the an order issued by the

Orange Circuit Court, Juvenile Division. As required by IND.CODE 31-6-4-6(e), the court held a detention hearing at which time it found probable cause to believe the children were CHINS and ordered the children's continued detention. The children were placed at the Knightstown Institution, a shelter care facility. The facts upon which the court based its probable cause detention order are not in the record before us.

On July 19, 1989, Wheat's caseworker proposed Wheat's AFDC benefits be discontinued due to the removal of Wheat's children pursuant to the court's probable cause detention order. The reduction became effective August 1, 1989. Wheat continued to live in the same house from which her children had been removed, and she was responsible for only $14 a month of her federally subsidized rent. Wheat had no visitation with her children after they were removed, but she cooperated with the Division and worked toward getting her children returned home.

On October 6, 1989, Wheat admitted her children were CHINS; the juvenile court, however, was prohibited from making such a finding because the children's father had not made a similar admission. Four of Wheat's children returned home on October 17, 1989, and the other two children returned on December 17, 1989. At the disposition hearing conducted on March 12, 1990, the court found the children were CHINS.

Wheat received no AFDC in August, September, or October 1989. She received AFDC for herself and four children in November and December 1989. With all six children finally home, Wheat was again eligible to receive $522.00 in AFDC benefits beginning in January 1990.

*Melissa Branaman*

Melissa Branaman resided in Jackson County, Indiana, with her two minor children. Branaman received $288.00 per month in AFDC benefits for herself and her two children.

On June 20, 1989, the Jackson County Division removed the children from Brana-

man's home pursuant to a detention order issued by the Jackson Circuit Court. The court scheduled a fact-finding hearing for early August to determine whether the children were CHINS. That hearing was never held. Because of the CHINS probable cause detention order, Branaman's caseworker proposed discontinuing Branaman's AFDC grant effective July 1, 1990. Filing a timely appeal to the proposed elimination of her benefits, Branaman continued to receive $288.00 per month pending the outcome of her appeal.

On September 25, 1990, an ALJ conducted a hearing to determine Branaman's benefits entitlement. As of that date, the juvenile court had not held a fact-finding hearing regarding the CHINS allegations. Branaman continued to live in the home from which her children had been removed. She paid $175.00 for rent in addition to expenditures for utilities and food. She visited regularly with her children in her home, and the Division required her to maintain her home as a condition of having her children returned to her.

On November 20, 1990, the ALJ upheld the Division's proposal to terminate Branaman's AFDC as of July 1, 1990. The ALJ also authorized the Division to recover as overpayments the entire $288.00 paid monthly from July through October 1990. Branaman became ineligible to receive AFDC after October because of the income of her new husband and father of her third child, born in September 1990. The Division eventually returned her two oldest children in early April 1991.

## DISCUSSION AND DECISION

### Standard of Review

■ The Division appeals the trial court's grant of summary judgment in the parents' favor. Because this action was brought under § 1983 and not the Administrative Adjudication Act, *see Stevens v. DPW* (1991), Ind.App., 566 N.E.2d 544, 546, *trans. denied,* we apply the same standard as the trial court in reviewing the propriety of the grant of summary judgment. *Fetz v. Phillips* (1992), Ind.App., 591 N.E.2d

644, 646. Summary judgment is proper when the designated pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hamilton v. Roger Sherman Architects Group, Inc.* (1991), Ind.App., 565 N.E.2d 1136, 1137; Ind.Trial Rule 56(C). When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *State ex rel. Indiana State Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 830. This court will affirm a summary judgment based on any legal theory which is consistent with the facts designated by the parties. *Jackson v. Blanchard* (1992), Ind. App., 601 N.E.2d 411.

Because the parties do not dispute the facts in this case, we must determine whether the Division's policy of reducing or terminating AFDC benefits for a child who has been removed from his or her home under a court-issued probable cause detention order but before the child has been adjudicated a CHINS violates federal law.

### AFDC Program

■ There is no constitutional right to receive welfare benefits from the government. *Eddleman v. Center Tp. of Marion County* (S.D.Ind.1989), 723 F.Supp. 85. When a state agency denies welfare benefits provided for by federal law, the aggrieved recipient may bring a § 1983 [4] civil action for deprivation of the congressionally-created rights. *Maine v. Thiboutot* (1980), 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555, 559. The issue in this case is whether AFDC recipients are entitled to receive benefits under the federal Social Security Act, 42 U.S.C. § 601 *et seq.*, when their children have been removed from their homes under CHINS probable cause detention orders.

The federal AFDC program was established "to provide financial assistance to needy dependent children and their parents or other relatives who make a home for them and take care of them." *Shea v. Vialpando* (1974), 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120, 125. The program seeks to encourage

the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as are as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection....

42 U.S.C. § 601.

■ The federal government will reimburse a participating state for a percentage of the funds disbursed to assist eligible families. *Heckler v. Turner* (1985), 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed.2d 138, 143; 42 U.S.C. § 601 *et seq.* For federal reimbursement eligibility, the participating state must administer its assistance program pursuant to a state plan that conforms to applicable federal statutes and regulations. *Id.* at 189, 105 S.Ct. at 1141, 84 L.Ed.2d at 143. The participating states may not impose stricter eligibility requirements than those contained in the federal programs. *See Ayres v. Babcock* (6th Cir.1989), 867 F.2d 296, 300. "When a state accepts federal money for its public assistance program, it does so with the realization that there are 'strings attached.' A subsequent failure to follow the applicable federal statutes and regulations may result in a withdrawal of federal funds."

---

**4.** Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

*Cornelius v. Minter* (D.Mass.1974), 395 F.Supp. 616, 621–22.

As required by the federal Social Security Act, Indiana has promulgated a plan to provide aid and services to needy families with children. IND.CODE 12–14–1–1 *et seq.* Pursuant to that plan, the director of the Division may adopt rules governing AFDC eligibility provided the rules comply with the federal statutes and regulations. IND.CODE 12–14–1–1.

### AFDC Eligibility

■■■ The Division contends it properly reduced or terminated the parents' AFDC benefits while their children were detained under probable cause detention orders because parents of detained children necessarily do not meet the AFDC requirement of exercising responsibility for their children's care and control.

In challenging the Division's policy as violative of the Social Security Act, the parents urge us to focus on the temporariness of their children's absences. Until there were CHINS adjudications, the parents argue, the Division had to treat their children's absences as temporary, and temporary absences do not affect AFDC eligibility. The parents also contest the Division's assertion that they had no parental responsibilities during their children's absences. They were responsible for maintaining homes to which their children could return, and, if they had visitation rights, they were responsible for the expenses of those visits.

In order for a household to be eligible for AFDC benefits, the dependent children must be "living with" a specified relative. 42 U.S.C. § 606(a); IND.CODE 12–14–1–1. Federal regulations provide that "[a] child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent" or with another specified relative. 45 C.F.R. § 233.90(c)(v)(A). The terms "home" and "living with" are defined in 45 C.F.R. § 233.90(c)(v)(B) as follows:

A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. *A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary setting.* Within this interpretation, the child is considered to be "living with" his relative even though:

(1) He is under the jurisdiction of the court (e.g., receiving probation services or protective supervision); or

(2) Legal custody is held by an agency that does not have physical possession of the child.

(Emphasis added.) This provision clearly states that the "home" continues to exist under some circumstances even though the child is temporarily absent from the customary setting.

Continued eligibility during a temporary absence is not unconditional, however. To maintain AFDC eligibility, the federal regulations require the relative to "exercise[ ] responsibility for the care and control of the child." 45 C.F.R. § 233.90(c)(v)(B). As interpreted by the United States Court of Appeals for the Sixth Circuit, the federal standard of AFDC eligibility ultimately turns on the "assumption and continuation of responsibility for day to day care of the child." *Ayres, supra,* at 301. This court is bound by federal court interpretation and operation of federal legislation. *Edwards v. Bethlehem Steel Corp.* (1990), Ind.App., 554 N.E.2d 833, 835, *trans. denied.* Mindful of the standard enunciated in *Ayres,* we must determine the level of day-to-day care and responsibility that is sufficient to maintain AFDC eligibility during a child's detention.

In each factual scenario here, the children were placed in either foster care or other shelter care facilities after being removed from their homes. As defined by IND.CODE 12–7–2–90, a "foster home" is

a place where an individual resides and provides care and supervision as a substitute family on a twenty-four (24) hour basis to a child who:

(1) is not the:

(A) child;

(B) stepchild;

(C) grandchild;

(D) niece;

(E) nephew; or

(F) sibling;

of the individual providing care and supervision;

(2) is separated from the child's:

(A) parent;

(B) stepparent;

(C) guardian;

(D) custodian; or

(E) other relative; and

(3) is receiving care and supervision under an order of a juvenile court or for the purposes of placement.

This provision makes clear foster care serves as a substitute for the parent's or relative caretaker's day-to-day care and supervision of the child. Similarly, the Supreme Court has stated that the foster parent becomes responsible for the "day-to-day supervision of the child and his activities, and most of the functions ordinarily associated with legal custody...." *Smith v. Organization of Foster Families* (1977) 431 U.S. 816, 827, 97 S.Ct. 2094, 2100–101, 53 L.Ed.2d 14, 24. As interpreted by the Supreme Court, day-to-day responsibilities include the right and duty "to provide for the child's daily needs—to feed him, clothe him, provide shelter, put him to bed, send him to school, see that he washes his face and brushes his teeth." *Id.* at 827 n. 17, 97 S.Ct. at 2101 n. 17, 53 L.Ed.2d at 24 n. 17 (citation omitted). These, we believe, are the kinds of responsibilities for day-to-day care and control envisioned by the AFDC program. When a parent or caretaker ceases to exercise these responsibilities, AFDC eligibility ceases.

It is clear that in this case, the parents' maintenance of their homes and limited visitation occurred independently from their children's day-to-day lives in foster care. This is further illustrated by the fact that Hupp was incarcerated for a period during her children's absence. When she was not incarcerated, she had visitation with her children in her home only a few hours a day three days a week. Similarly, there is no evidence Branaman assumed day-to-day responsibility for her children during their detentions in foster care. The simple truth is foster care provided a substitute family for these children. It was the foster parents who fed and clothed and sheltered them; it was the foster parents who assumed their charges' day-to-day care.

The same considerations apply when children are placed in a shelter care facility rather than in foster care. Here, Wheat had no visitation with her two children who were placed at the Knightstown shelter care facility, and she was responsible for only $14 of her federally subsidized monthly rent. While her children were absent from her home, Wheat simply had no responsibility for her children's day-to-day care and control. The Division's termination of AFDC benefits under these facts did not violate federal regulations.

We do not rule, however, that a parent could never maintain AFDC eligibility when his or her child has been removed from the home under a CHINS probable cause detention order. Dispositive here is the degree of day-to-day care and control exercised by the AFDC recipient, not the issuance of a detention order or a CHINS adjudication.[5] To the extent the Division requests us to rule that its policy of reducing or terminating AFDC benefits based solely on a CHINS probable cause detention order complies with federal law, we decline. Rather, the Division may properly reduce or terminate AFDC benefits when a recipient ceases to exercise responsibility

---

**5.** We disagree with the parents' contention a CHINS adjudication and dispositional order are accurate factors in determining whether a child's absence will be something other than temporary. In this case, Wheat admitted her children were CHINS on October 6, 1989, but the court was prohibited from making such a finding because the children's father had not made a similar admission. Despite Wheat's admission, all six of her children were returned to her by December 17, 1989, and the court eventually found her children were CHINS on March 12, 1990. The adjudication, therefore, had nothing to do with Wheat's assumption of responsibility for the care and control of her children.

for the day-to-day care and control of his or child.

■ Our decision today is also compelled by the AFDC statutes and regulations which prohibit granting AFDC benefits when title IV–E foster care payments are made for the same child for the same period. 42 U.S.C. § 609(a); 45 C.F.R. 233.-90(c)(2). Congress has provided no exceptions to this clear and unambiguous requirement. If title IV–E foster care payments are made on behalf of a child who has been removed from his or her home following a CHINS allegation, Indiana will not receive federal reimbursement for AFDC assistance directed to that child's former household. We are neither prepared nor permitted[6] to force Indiana to forego federal reimbursement for AFDC grants because duplicate foster care payments are also disbursed. As mandated by the Social Security Act, a parent is prohibited from receiving AFDC assistance when title IV–A foster care payments are made for the same child for the same period. The parents' claim under § 1983 that the Division's policy deprives them of AFDC benefits to which they are entitled is unpersuasive.

### Indiana's AFDC Guidelines

■ Having concluded the federal regulations do not permit continued AFDC benefits under the facts before us, we also disagree with the trial court's conclusion Indiana's guidelines permit continued AFDC benefits in this case.

The Indiana Division has promulgated the following guideline concerning a "temporary absence from the home":

A child receiving assistance to families with dependent children or the parent or caretaker relative of said child may continue to receive assistance if he is temporarily absent from the home. A temporary absence may not exceed ninety (90) days except in the following situations: (a) the absent recipient is receiving treatment in a hospital, skilled nursing facili-

ty, or intermediate care facility when it is verified by a physician's statement that the nature of the illness is such that an eventual return to the home is expected; or

(2) the absent child is attending and living at an educational institution so long as the child spends weekends or vacations in the home and intends to return home at the end of the school year.

470 I.A.C. 10.1–2–2 (Supp.1987). Consistent with the federal regulations, Indiana's guideline explicitly permits AFDC eligibility during temporary absences, and, in some circumstances, even when the absence continues for more than 90 days.

The trial court concluded 470 I.A.C. 10.1–2–2 permits Indiana to provide AFDC benefits when children are absent from their homes regardless of their parents' lack of specific responsibility for their day-to-day care and control provided the absences are only temporary. Maintaining homes to which the children can return is sufficient to continue AFDC eligibility, reasoned the court. Applying this rule to absences created by CHINS probable cause detention orders, the court concluded Indiana's AFDC plan permits children to be absent from their homes for up to 90 days, no questions asked, without losing AFDC eligibility. Once a child is adjudicated a CHINS, however, the court concluded the Division may properly terminate AFDC benefits because the absence is no longer temporary. Interpreting Indiana's guideline as the trial court has renders the guideline violative of federal regulations.

We believe the trial court has interpreted 470 I.A.C. 10.1–2–2 too broadly. It is a well-established rule of statutory construction that when certain items or words are specified or enumerated in a statute, then, by implication, other items or words not so specified or enumerated are excluded. *Health and Hosp. Corp. of Marion County v. Marion County* (1984), Ind.App., 470 N.E.2d 1348, *trans. denied.* In this case, 470 I.A.C. 10.1–2–2 explicitly provides for a

**6.** Pursuant to IND.CODE 12–14–1–1, Indiana's AFDC guidelines must comply with federal statutes and regulations.

child's continued AFDC eligibility during a temporary absence due to a hospitalization or attendance at boarding school, but it fails to include a similar provision for the child's absence due to a CHINS allegation and subsequent court-ordered detention. *Cf. Roberts v. Perales* (1992), N.Y., 79 N.Y.2d 686, 595 N.E.2d 850, 584 N.Y.S.2d 775 (state plan provided that a temporary absence for purposes of continuing AFDC eligibility may include "temporary foster care", but court expressed no opinion as to permissibility of guideline under new federal statutes and regulations prohibiting duplicate payments for foster care and AFDC).

We will not now say the Division must read into Indiana's plan a provision which requires continued AFDC payments on behalf of a child temporarily absent from his or her home under a CHINS probable cause detention order regardless of the parent's lack of responsibility for that child's care and control. Consistent with federal law, Indiana's guidelines permit terminating or reducing AFDC benefits when a child is absent from the home under a CHINS probable cause detention order provided someone other than the parent or relative caretaker exercises responsibility for that child's care and control during the period of detention.

Finally, even if we were to conclude the AFDC regulations are silent or ambiguous as to whether children remain eligible for AFDC grants when they are removed from their homes under CHINS probable cause detention orders, we must still conclude the parents' § 1983 claim is not persuasive. A reviewing court pays great deference to an agency's reasonable interpretation of a silent or ambiguous statute when that agency has been charged with the statute's administration. *Ind. DNR v. Krantz Bros. Const.* (1991), Ind. App., 581 N.E.2d 935, 940. If it is ambiguous whether the federal and state regulations and guidelines permit continued AFDC benefits under the facts before us, we will let the Division's reasonable interpretation of those rules stand. Although there are no provisions which explicitly pro-hibit continued payments, the provisions in place support the policy of denying AFDC eligibility when parents or relative caretakers fail to provide a home for or take care of their needy dependent children, even if that failure is only temporary. *See Shea, supra,* 416 U.S. at 253, 94 S.Ct. at 1750, 40 L.Ed.2d at 125.

## CONCLUSION

The Division's policy of reducing or terminating AFDC benefits for children removed from their homes and temporarily detained under CHINS probable cause detention orders does not violate federal law provided the AFDC recipient has ceased to exercise responsibility for his or her children's care and control during their absences from home. The trial court's judgment in the parents' favor is reversed and the permanent injunction is dissolved. Because the parents in this case ceased to exercise responsibility for their children's care and control during their children's absences, we remand to the trial court with instructions to enter summary judgment in the Division's favor.

RATLIFF, Senior Judge, concurs.

RUCKER, J., concurs in result.