GIBSON COUNTY, Indiana; Anne Myers, Auditor of Gibson County, IN; Allen C. Perkins, Treasurer of Gibson County, IN; Leonard Lutz, Member of the Board of County Commissioners, Gibson County, IN; Warner Clem, Member of the Board of County Commissioners, Gibson County, IN; Allen Harmon, Member of the Board of County Commissioners, Gibson County, IN; Hubert O. Crawford, Member of the County Council of Gibson County,

---

State of IN; Richard McConnell, Member of the County Council of Gibson County, IN; James J. Mason, Member of the County Council of Gibson County, IN; Claude A. Davis, Member of the County Council of Gibson County, IN; Fred Kuester, Member of the County Council of Gibson County, IN; Charles E. Schoultz, Member of the County Council of Gibson County, IN; and Charles E. Mills, Member of the County Council of Gibson County, IN, Appellants–Defendants,

v.

STATE of Indiana ex rel. Velcia EMMERT, Appellee–Plaintiff.

No. 26A01–9207–CV–241.

Court of Appeals of Indiana, First District.

March 9, 1993.

George T. Patton, Jr., Bose, McKinney & Evans, Indianapolis, Robert J. Fair, Fair & Nixon, Princeton, for appellants-defendants.

James G. McDonald, Jr., James G. McDonald, III, McDonald & McDonald, Princeton, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellants Gibson County, its auditor, treasurer, and the individual members of its board of county commissioners and county council (collectively, Gibson County) appeal the grant of summary judgment in favor of plaintiff-appellee Velcia Emmert, the Gibson County Sheriff's Department prison matron, on the latter's claim for back-pay.

## FACTS AND PROCEDURAL HISTORY

The facts underlying this appeal are not in dispute. When Roger Emmert became sheriff of Gibson County in 1963, he hired his wife, Velcia Emmert, as the local prison matron. Neither party signed a written contract. Mrs. Emmert's duties included supervising the female prisoners, cooking, cleaning, and answering the telephone.

In 1972 the General Assembly amended the prison matron statute, currently IND. CODE 36–8–10–5, to provide that "the prison matron ... shall be paid such compensation or salaries as other deputy sheriffs and police officers are paid."[1] Notwithstanding the statute, between 1972 and 1982 Mrs. Emmert was not paid as much as other comparably-ranked Gibson County deputy sheriffs and police officers. Mrs. Emmert knew she was entitled to more pay all along; she simply did not actively seek it. In 1983, a budget was finally submitted specifically requesting Mrs. Emmert receive the same pay as the other deputy sheriffs and police officers. The request was approved.

Mrs. Emmert served as prison matron until 1987. In 1988, she filed an itemized "complaint for mandate" against Gibson County seeking the difference between the amount she was actually paid from 1972 until 1982 and the amount paid to comparably-ranked deputy sheriffs and police officers during that period. The difference in these two amounts averaged about $2,500.00 per year. Gibson County's original answer asserted Mrs. Emmert's claim was barred by the applicable statute of limitations.

On November 30, 1990, Mrs. Emmert moved for summary judgment, arguing no issues of material fact existed and that she was entitled to judgment as a matter of law. To support her motion, Mrs. Emmert submitted five affidavits establishing that she was prison matron between 1972 and 1982, that she performed the duties required of her, and that during this time she was paid less than comparably-ranked deputy sheriffs and police officers.

On December 14, 1990, Gibson County filed another document, also entitled "Answer," which reiterated its position that Mrs. Emmert's claim was untimely filed and added the defense that the county council was never asked to give Mrs. Emmert more pay. Gibson County then deposed Mrs. Emmert in March of 1991. At one point in the questioning, Gibson County sought to discover whether Roger Emmert and the president of the county council had agreed in 1983 that in exchange for a pay raise, Mrs. Emmert would forego her claim(s) for back pay:

Q: Did you ever hear that Roger at the time, in 1983, when the budget was made and you were given the raise to which you thought you had been entitled all along, that he discussed the matter with the president of the county council and indicated to him that if this could be done now, there would be no claim made for past years?

---

1. 1972 Ind.Acts Pub.L. No. 91–1972.

*Record* at 157. Mrs. Emmert's attorney advised Mrs. Emmert not to answer the question on the grounds there had been no foundation laid that Mr. Emmert was authorized to bind Mrs. Emmert in any way. When Mrs. Emmert did not answer the question, Gibson County certified the question and later asked the trial court to require Mrs. Emmert to answer. The trial court refused to compel an answer.

On August 14, 1992, Gibson County filed a document entitled "Additional Answers," in which, for the first time, it asserted the affirmative defenses of laches and estoppel. After a hearing, the trial court entered summary judgment against Gibson County and awarded Mrs. Emmert $27,352.65 in damages and $23,193.63 in prejudgment interest, for a total award of $50,546.28. Gibson County appeals. We address the following two issues:

I. Did Mrs. Emmert timely file her claim?

II. Do genuine issues of material fact exist, thereby rendering summary judgment inappropriate?

## DISCUSSION AND DECISION

### Standard of Review

■ This is an appeal from the entry of summary judgment. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The moving party bears the burden of proving the non-existence of a genuine issue of material fact. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. Once the movant fulfills this requirement, the burden shifts to the party opposing the motion to set forth specific facts showing there is a genuine issue for trial after all. *Id.;* T.R. 56(E).

■ On appeal from the grant of summary judgment, we face the same issues the trial court faced and we apply the same analysis. We are required to scrutinize the trial court's determination carefully in order to assure the non-prevailing party is not improperly denied its day in court. *Id.* "On appeal, however, the party which lost in the trial court has the burden to persuade the appellate tribunal that the trial court's decision was erroneous." *Id.* We will affirm a summary judgment under any legal theory supported by the facts. *See Indiana Dep't of Public Welfare v. Hupp* (1992), Ind.App., 605 N.E.2d 768, 773.

### I. Was Mrs. Emmert's Claim Timely Filed?

Gibson County claims summary judgment in Mrs. Emmert's favor is inappropriate because her claim was not timely filed. To resolve this issue we must first determine which of the several limitation periods is applicable to the facts of this case.

■ Whether Mrs. Emmert's employment contract was oral or written makes an extraordinary difference for statute of limitations purposes. All actions relating to the terms, conditions, and privileges of an oral employment contract are subject to a two-year limitation period. IND.CODE 34-1-2-1.5. In contrast, written contracts, except those for the payment of money, are subject to a twenty-year limitation period, so long as the written contract was entered into before September 1, 1982. IND.CODE 34-1-2-2(6). If neither statute applies, IND.CODE 34-1-2-3, the statute of repose, imposes a fifteen-year limitation period.

Mrs. Emmert never held a tangible written document of employment in her hands. This does not necessarily mean, however, that her contract of employment was not "written." In *City of Terre Haute v. Brown* (1985), Ind.App., 483 N.E.2d 786, Terre Haute firemen were reduced in grade without notice. They did not file suit until more than four years after the reduction. After observing that the firemen's employment status was created by a combination of statutes, ordinances, and safety board records, and that these regulations became a part of the contract "as if their terms were expressly referred to or incorporated therein[,]" this court "judicially held" firemen's employment contracts to be written and therefore subject to the twenty-year limitation period. *Id.* at 787–88.

The *City of Terre Haute* court cited *City of Indianapolis v. Sherman* (1980), Ind. App., 409 N.E.2d 1202, as authority for the proposition that "[w]hen city employees are appointed or enter into the performance of their duties, a valid written contract of employment is created." *City of Terre Haute, supra,* at 788. In *City of Indianapolis,* Judge Chipman reported that "[o]ur courts have consistently held that a duly appointed police officer, who has taken the required oath and entered into the performance of his duties as a policeman, has a valid written contract of employment...."

■ We see no reason to treat Mrs. Emmert differently from the firefighters in *City of Terre Haute* or the police officers in *City of Indianapolis.* Indeed, IND. CODE 36–8–10–5, which requires appointment of a prison matron, expressly declares "[t]he prison matron and assistant matrons are members of the department, have the powers and duties of members of the department, and are entitled to the same salary that other members of the department of the same rank, grade, or position are paid." IND.CODE 36–8–10–5(d). The legislative intent to treat prison matrons as "regular" police officers is plain. We are compelled to conclude that under the authority of *City of Terre Haute, supra,* and *City of Indianapolis, supra,* Mrs. Emmert's employment contract was written. Accordingly, any claim relating to it is subject to the twenty-year limitation period prescribed by IND.CODE 34–1–2–2(6).

Gibson County argues *City of Terre Haute* conflicts with *State v. Puckett* (1988), Ind.App., 531 N.E.2d 518, in which this court held that the State's action to recover money allegedly wrongfully paid to Samuel Puckett, the Chief of Internal Affairs for the Indiana Department of Correction, was governed by the two year limitation period of IND.CODE 34–1–2–1.5. In footnote 9 of that opinion this court declined to follow *City of Terre Haute*'s transformation of an oral contract into a written one, noting "[i]t is one thing to hold that an oral contract is governed in part by applicable statutes and regulations. It is quite a different thing to say that such renders the contract a contract in writing." *Puckett, supra,* at 526 n. 9.

We do not see the two cases as necessarily conflicting. Puckett was not a police officer, like the plaintiff in *City of Indianapolis,* nor a firefighter, like the plaintiffs in *City of Terre Haute.* Rather, Puckett was Chief of Internal Affairs at the Department of Correction. This might be a distinction without a difference were it not for the fact that "our courts have consistently held that a duly appointed police officer, who has taken the required oath and entered into the performance of his duties as a policeman, has a valid written contract of employment." *City of Indianapolis, supra,* at 1207. Because Puckett was not a police officer, the rule imposing written contracts on police officers did not apply to his case. Moreover, we observe the rule dates back to the 1940s and has not been changed by legislative *fiat.* See *Marter v. City of Vincennes* (1948), 118 Ind.App. 586, 82 N.E.2d 410; *Kirmse v. City of Gary* (1944), 114 Ind.App. 558, 51 N.E.2d 883.

Just as *City of Terre Haute, supra,* and *Marter, supra,* extended the rule to firefighters and other "city employees," we extend the rule to prison matrons. Here, we do not know whether prison matrons are required to take oaths, but we do know there is no allegation that Mrs. Emmert was required to take one and did not. Neither is there any allegation that Mrs. Emmert did not perform her duties as a prison matron. Given the legislature's declaration that prison matrons are police department members, subject to the same powers, obligations, and pay, we conclude Mrs. Emmert's employment contract was written and subject to the twenty-year limitation period imposed by IND.CODE 34–1–2–2(6). It follows that Mrs. Emmert's 1988 claim for back pay between the years 1972 and 1982 was timely filed.

## II. Do Any Genuine Issues of Material Fact Exist?

Mrs. Emmert is not necessarily entitled to judgment as a matter of law, however,

because her claim can still be defeated by the equitable doctrines of laches and estoppel. Gibson County argues it raised genuine issues of material fact regarding the harm it suffered on account of Mrs. Emmert's delay in asserting her claim, making summary judgment inappropriate. Mrs. Emmert denies Gibson County raised any genuine issues of material fact on the laches and estoppel issues.

Mrs. Emmert filed her complaint on September 18, 1989. On November 8, 1989, Gibson County filed an answer and a motion to dismiss, which both relied on the affirmative defense of the statute of limitations. Gibson County did not mention laches or estoppel. About a year later, on November 30, 1990, Mrs. Emmert moved for summary judgment. She submitted five affidavits which established that she performed her duties as required but did not receive as much pay as similarly-situated police officers and deputy sheriffs. Not only did she establish a *prima facie* lack of a genuine issue of material fact, but she also established· a *prima facie* case that she was entitled to judgment as a matter of law by demonstrating her claim was timely filed.

Seemingly in response to Mrs. Emmert's summary judgment motion, Gibson County filed another "Answer" on December 14, 1990. *Record* at 69. There is nothing in the record to suggest Gibson County asked for or received permission to amend its original answer (or file a second answer, depending on how the document is characterized). This amended (or second) answer interposed three affirmative defenses, of which the latter two appear in the record. The second affirmative defense asserted Gibson County was never asked to give Mrs. Emmert equal pay, and the third cited a ten-year statute of limitations.

Some eighteen months later, Gibson County filed a brief in opposition to the summary judgment motion. Again, neither laches nor estoppel was mentioned. It was not until August 14, 1992, that Gibson County finally raised the laches and estoppel issues, when it filed a document entitled "Additional Answers." *Record* at 76.

This document merely announced the defenses; it did not set forth any factual assertions supporting them. Again, there is no indication in the record Gibson County received permission to file yet another amended (or third) answer.

■ Indiana favors a liberal policy when it comes to amending pleadings. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985. This liberal policy finds expression in Ind.Trial Rule 15(A), which allows a party to "amend his pleading once as a matter of course at any time before a responsive pleading is served...." If the pleading is one to which no responsive pleading is permitted, and the action has not been placed on the trial calendar, the pleading may be amended at any time within thirty days after it is served. *Id.* "Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." *Id.*

■ Here, Gibson County did not raise the laches or estoppel defenses until it amended its answer for the second time or filed its third answer, again depending on one's characterization of the third document. T.R. 15(A) does not permit a second amendment as a matter of right and we know of no rule allowing a party to file—let alone rely upon—second or third answers. Assuming the third document is most correctly seen as a second amendment to the original answer, Gibson County was required to obtain either leave of court or Mrs. Emmert's written consent before amending its answer a second time. T.R. 15(A). Because it obtained neither, Gibson County's second amended answer violated the trial rules.

Gibson County now seeks to rely on its second amendment—an amendment not permitted by the trial rules—to support its claim that it raised a genuine issue of material fact precluding summary judgment. We find this unreasonable and improper. Just as a party attempting to defeat a motion for summary judgment must establish the existence of a genuine issue of material fact by setting forth facts which would be admissible in evidence, so too

must the vehicle for setting forth the facts be in compliance with the trial rules. We simply can think of no rationale for allowing a party to create a genuine issue of material fact by means of a wholly improper pleading. To put it mildly, were we to allow such an end-run, the orderly administration of summary judgment litigation would suffer.

The only time Gibson County raised the issues of laches and estoppel was in the second amended answer, which we have determined to be ineffective for that purpose. Thus, not only did Gibson County fail to raise a germane factual dispute regarding laches and estoppel, in effect it failed to raise the defenses in the first instance.

Gibson County also argues the trial court erroneously deprived it of the opportunity to establish a common element of the laches and estoppel defenses—resultant prejudice—when the trial court refused to require Mrs. Emmert to answer the question of whether her husband had reached an agreement with the president of the county council. But because we have determined Gibson County did not effectively assert the defenses in the first instance, it is no longer necessary to consider the allegation that but for the trial court's error, there would have been a genuine issue of material fact.

Because there existed no genuine issue of material fact and because Mrs. Emmert was entitled to judgment as a matter of law, the trial court correctly granted summary judgment in Mrs. Emmert's favor.

Affirmed.

ROBERTSON and NAJAM, JJ., concur.