ATTORNEYS FOR APPELLANTS
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Steve R. Creason
Patricia O. Erdmann
David L. Steiner
Frances H. Barrow
Ashley E. Harwel
Heather H. McVeigh
Donald G. Banta
Laura L. Bowker
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
William A. Hasbrook
John F. Kautzman
Indianapolis, Indiana

Stephen D. Susman
Jonathan Bridges
Stephen Shackelford, Jr.
Dallas, Texas

FILED

Feb 16 2012, 10:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1106-CV-327

RICHMOND STATE HOSPITAL AND ALL
OTHER SIMILARLY SITUATED STATE
INSTITUTIONS AND AGENCIES,

*Appellants (Defendants below),*

v.

PAULA BRATTAIN, ET AL.,

*Appellees (Plaintiffs below).*

Appeal from the Marion Superior Court, No. 49D11-0108-CP-1309
The Honorable John F. Hanley, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0908-CV-00718

**February 16, 2012**

**Per Curiam.**

In short summary, for over twenty-five years, the State of Indiana required certain employees to work 40-hour weeks while requiring certain other employees to work only 37.5-hour weeks. Though the employees received the same biweekly paycheck, the effect of the State's policy was a disparity in actual hourly wage. The State ended the policy in 1993, but this class action was brought on behalf of those 40-hour employees.

## Facts and Procedural History

The Court of Appeals did an exceptional job of detailing the extensive history of this litigation, as well as the history of the State's work-hour policies, Richmond State Hosp. v. Brattain, 935 N.E.2d 212, 217–24 (Ind. Ct. App. 2010), modified on reh'g, 939 N.E.2d 1125 (Ind. Ct. App. 2010), and we expressly adopt and incorporate by reference this portion of their opinion. Ind. Appellate Rule 58(A)(1).

The State raised nine issues in its appeal from the trial court's judgment, which the Court of Appeals described as:

> (1) whether the trial court erred in finding that the merit Employees were not required to exhaust any available administrative remedies because to do so would have been futile; (2) whether the trial court abused its discretion in certifying a plaintiff class; (3) whether the trial court clearly erred in finding that the merit Employees were entitled to damages for the State's alleged breach of the "equal pay for comparable work" provision of the State Personnel Act; (4) whether the trial court clearly erred in finding that the nonmerit Employees were entitled to damages for the State's alleged breach of contract; (5) whether the trial court clearly erred in finding that the merit employees were entitled to receive twenty years of back pay; (6) whether the trial court clearly erred in determining which job classifications were split; (7) whether the trial court abused its discretion in admitting Plaintiffs' Exhibit C; (8) whether the trial court erred in relying on the damages estimates prepared by the Employees' damages expert; and (9) whether the Employees' claims are barred under the equitable doctrine of laches.

Richmond State Hosp., 935 N.E.2d at 217. The Court of Appeals found no error with respect to issues (1), (2), (3), (4), (6), (7), and (8). Id. With respect to issue (5), it reversed and remanded,

finding that the back pay for merit employees should be calculated beginning on a date ten days prior to the filing date of the employee complaint, and concluding on the date the State ended its split-job classification system. The court further found that the State had not proven the elements of laches in issue (9).

Thus, as the case left the Court of Appeals, the employees' claims resolve as follows:

- The merit employees, both overtime-exempt and overtime-eligible, are owed back pay on their statute-based claim for the period beginning either ten days before the complaint or ten days before the filing of their grievances, whichever came first, until the day the State eliminated its split-pay system.
- The non-merit employees, both overtime-exempt and overtime-eligible, are owed back pay on their constitutional claims for a period of time ending the day the State eliminated its split-pay system and extending back some twenty years.

We granted transfer, 950 N.E.2d 1211 (Ind. 2011) (table), and of necessity this case is being heard by only four members of this Court. The four participating Justices have cast diverging votes as to the various claims and subclaims delineated above, but cognizant of the need to conclude a case that has now lasted nineteen years, we have attempted to forge a result that will prevent perpetuation of the contest.[1] With those votes largely characterized by a 2-2 division, we summarily affirm the Court of Appeals with respect to its determination of the merit employees' claims. Ind. Appellate Rule 58. The sole exception relates to the State's contention that laches should bar outright the employees' claims, which we discuss below.

---

[1] Fortunately, the record set by Jarndyce and Jarndyce still lies beyond. See Charles Dickens, Bleak House (1853). It concerns an inheritance and drags on in English courts for generations. Ultimately, the case resolves itself only when the entirety of the inherited estate is absorbed by the court costs.

**Laches Limits Damages Flowing from the Constitutional Claims**

The State contends that the equitable doctrine of laches operates to bar all of the employees' claims. (Appellant's Br. at 53–54.) The employees do not dispute that laches could apply, arguing instead that the evidence was insufficient to support a ruling in the State's favor. (Appellee's Br. at 41–43.) We think the State's position goes too far, and we largely reject it, except as to part of the recovery for the non-merit employees.

We have previously said of the laches doctrine that "'[i]ndependently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.'" SMDfund, Inc. v. Fort Wayne-Allen Cty. Airport Auth., 831 N.E.2d 725, 729 (Ind. 2005) (quoting Penn Mut. Life Ins. Co. v. Austin, 168 U.S. 685, 698 (1898)). It "has been aptly referred to as the doctrine of stale demand," and reflects the courts' unwillingness "to come to the aid of a party who has knowingly slept on his rights under circumstances where he might have earlier asserted such rights in the exercise of due diligence." Lake Caryonah Improvement Ass'n v. Pulte Home Corp., 903 F.2d 505, 509 (7th Cir. 1990) (citing Schroeder v. Schlueter, 407 N.E.2d 204, 207 (Ill. App. Ct. 1980)). And though it arose as an equitable defense, "[b]ased on the twin goals of limiting monetary consequences to the government and compelling the speedy resolutions of disputes . . . it has been applied to claims for back pay by government personnel brought even before the limitations period has run, notwithstanding that these are actions at law, not equity." Cornetta v. United States, 851 F.2d 1372, 1376 (Fed. Cir. 1988); see also Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix, 283 F.3d 877, 880–81 (7th Cir. 2002) (doctrine applies "regardless of whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law"). In applying the doctrine, courts may restrict (or even deny outright) an award of damages—including back pay. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373 (1977).

To prevail in a defense of laches, the defendant must show "'(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing

4

conditions; and (3) a change in circumstances causing prejudice to the adverse party.'" SMDfund, Inc., 831 N.E.2d at 729 (quoting Shafer v. Lambie, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996)). Despite this structured test, "[t]here is no fixed or definite rule for the application of the doctrine of laches." Grantham Realty Corp. v. Bowers, 215 Ind. 672, 686, 22 N.E.2d 832, 839 (1939).

With these principles in mind, we examine the circumstances of this litigation. The State instituted its split-pay system in 1967 and the non-merit sub-class representatives, Francis Ernst and Terry Sutcliffe, began their employment with the State in 1969. A generation later, the Court of Appeals decided Arden v. State Employees' Appeals Commission, 578 N.E.2d 769 (Ind. Ct. App. 1991), laying the legal foundation upon which this current litigation rested when it was initiated by merit employees in July 1993.

By September 1993, the State had abolished its split-pay system. The landmark case of Collins v. Day that established the appropriate test for claims alleging violations of the Equal Privileges Clause of Indiana's constitution (and upon which basis the non-merit employees' claim rests), was decided in 1994. Collins v. Day, 644 N.E.2d 72 (Ind. 1994).[2] Also in 1994, the General Assembly amended Section 34-1-2-1.5 of the Indiana Code, providing for only a two-year statute of limitations in bringing employment suits against the State.[3]

It was not until February 2002, however, that the plaintiffs sought leave to amend their complaint to add claims of non-merit employees. We think this delay reflects an instance in which the doctrine of laches should apply.

---

[2] The non-merit employees also allege violation of Indiana's Just Compensation Clause. The foundational case for violations of this provision was decided in 1991. Bayh v. Sonnenburg, 573 N.E.2d 398 (Ind. 1991).

[3] Ind. Code § 34-1-2-1.5 (1994) (codified as amended at Ind. Code § 34-11-2-2 (1998)); Act of March 14, 1994, P.L. 153-1994, § 1(b), 1994 Ind. Acts 1840.

First, the delay in bringing non-merit employee claims was unreasonably long. The claims were brought about forty-five years after the State initiated its split-pay system, and forty-three years after the named plaintiffs in the non-merit sub-classes began their employment. While there may have been no case law recognizing a clearly defined, actionable claim during these decades, nothing barred the non-merit plaintiffs from seeking redress under the Just Compensation or Equal Privileges Clauses of the Indiana Constitution.

The Arden decision changed this landscape in 1991, making it clear that the split-pay system was unlawful. And though Arden did not address non-merit claimants, Sonnenburg clearly laid out a potential constitutional claim that same year—a claim that the non-merit plaintiffs waited eleven years to pursue. Collins then, three years later, articulated yet another possible constitutional claim for the non-merit plaintiffs—and yet they slumbered on this claim for eight years. And even when the merit employees launched this litigation in 1993 and the State abolished the split-pay system, the non-merit employees still sat on the sidelines for another nine years.

Finally, though the statute of limitation in effect at the time a lawsuit is commenced governs an action regardless of whether it lengthens or shortens the time allowed for bringing suit, the General Assembly has made it clear that Indiana's policy is to adopt temporal limits for employee claims against the State.[4]

---

[4] The 1994 amendment to Section 34-1-2-1.5 was in direct response to judicial decisions expanding the availability of those claims. See, e.g., Gibson Cty. v. State ex rel. Emmert, 609 N.E.2d 1179 (Ind. Ct. App. 1993); Indiana State Police Dep't v. Turner, 577 N.E.2d 598 (Ind. Ct. App. 1991), trans. denied; City of Terre Haute v. Brown, 483 N.E.2d 786 (Ind. Ct. App. 1985), reh'g denied. The premise of these decisions was that while municipal and State employees had no formal written contracts with their employers, and theoretically should have only had a two-year statute of limitations, the courts developed a body of law whereby they "judicially held" the employment contracts—based in "a combination of statutes, ordinances," and other administrative regulations—to be written and therefore subject to a longer statute of limitations. Gibson Cty., 609 N.E.2d at 1182–83 (citing City of Terre Haute, 483 N.E.2d at 787–88).

Of course, none of the events on this timeline were secret or confidential—nor was the State's split-pay employment system. And it is irrelevant that the State showed (or did not show) that the individual plaintiffs themselves were aware of counterparts receiving the same salary for working fewer hours. (See Appellee's Br. at 42.) What matters is that the injurious pay policy was public record, had been condemned in open court proceedings and abandoned by the State, availability of redress had been judicially recognized, and the General Assembly had expressed an intent to limit these precise sorts of actions by statutory change. "If they were unaware, they are nonetheless charged with notice of these activities by virtue of their public nature." SMDfund, Inc., 831 N.E.2d at 729. The non-merit employees' knowing inaction despite all this public notice is plainly inexcusable.

This brings us to whether this unreasonable delay caused a change in circumstances constituting prejudice to the State. The State contends it was prejudiced to the extent of $42 million—though the amount attributable to non-merit employees reflects only $18.7 million of that total—whereas had the claim been brought earlier, the State "would have been on notice of a problem and would have had an earlier opportunity to respond and limit liability." (Appellant's Br. at 54.) The employees, on the other hand, point us to Cornetta v. United States for the proposition that back pay damages are "not the kind of 'prejudice' on which a defendant may base a laches defense." (Appellee's Br. at 42.) Belatedly, the State also argues that it suffered "defense prejudice as evidenced by sketchy records, records without adequate foundation and confused witnesses testifying about things that happened as much as 37 years ago."[5] (Appellant's Reply Br. at 22.)

Cornetta involved an officer in the United States Marine Corps who sought reinstatement and back pay from an unlawful discharge. Cornetta, 851 F.2d at 1374–75. He filed suit seven years after his discharge date, and the district court dismissed the case based upon a laches

_____

[5] We think the Court of Appeals properly rejected this unsubstantiated aspect of the State's argument. Richmond State Hosp., 935 N.E.2d at 243.

7

defense. Id. at 1375. It concluded that the government was prejudiced by the potential back pay recovery, not by any defense prejudice "such as loss of records or fading memories." Id. The Federal Circuit reversed, rejecting the notion that the potential receipt of back pay constitutes prejudice in and of itself. Id. at 1380. "If back pay constitutes prejudice then virtually every suit could be said to be presumptively 'prejudicial' because most successful military claimants receive back pay." Id. at 1381. Specifically, the court found that because the amount of back pay the officer was seeking was no more than the amount he would have received had he timely filed his claim and had it resolved in the fastest manner possible, "the potential recovery of an amount of back pay equal to the amount that would accrue for the time to establish entitlement is not an element of prejudice to the government no matter when suit is brought." Id. at 1382.

Even setting aside the differences between a back pay claim involving a military officer and the civilian employees we deal with here,[6] Cornetta seems unpersuasive in the context of this case. To begin with, the Cornetta court specifically focused on the amount of the claim in question, $10,000, and how it amounted to only three months back pay—no more than the officer would have received had he timely filed his claim. Id. This is significantly different from the multi-million dollar judgment at stake here, which, though reflecting multiple claimants, involves back pay going back for twenty years.

Most importantly, however, the same principles that animate the administrative provisions governing the merit employees' claims compel the application of laches to the non-merit employees' claims. Those administrative provisions—creating a ten-day notice requirement—"exist[] to provide the State with notice and an opportunity to correct unsatisfactory conditions of employment in a timely fashion before substantial damages accrue." Ind. State Employees' Appeals Comm'n v. Greene, 716 N.E.2d 54, 57 (Ind. Ct. App. 1999), summarily aff'd, State Employees' Appeals Comm'n v. Bishop, 741 N.E.2d 1229, 1230 (Ind. 2001) ("Bishop II"). "To allow an employee to recover back pay for a period greater than ten

---

[6] See Cornetta, 851 F.2d at 1379.

days prior to the filing of the complaint putting the employer on notice of the unsatisfactory employment condition would undermine this purpose." Id.; see also Ind. State Employees' Appeals Comm'n v. Bishop, 721 N.E.2d 881 (Ind. Ct. App. 1999) ("Bishop I"), summarily aff'd, Bishop II, 741 N.E.2d at 1230; cf. Cornetta, 851 F.2d at 1381 (Congressional statutes addressing when military back pay claims become stale, and capping recovery, "define the remedy and specify the time within which to pursue it. Courts should be cautious in intruding on this legislative judgment."). Put simply, the "twin goals of limiting monetary consequences to the government and compelling the speedy resolutions of disputes" that permit the application of laches in this case support a finding of prejudice as well. Id. at 1376.

While we think the Attorney General's contention that laches should bar all claims by all claimants goes a bridge too far, we conclude that the inordinate delay as respects the non-merit claims—filed by amendment forty-five years after they arose—warrants limitation on the damages as to these claims only.

Accordingly, in the context of this particular case and under these particular circumstances, we hold that the back pay recovery of the non-merit employees should be limited in the same manner as the Court of Appeals has set forth for that of the merit employees. See Richmond State Hosp., 939 N.E.2d at 1128. We remand with instructions to recalculate the non-merit employees' back pay judgment based upon that time period, and summarily affirm the Court of Appeals in all other respects.

**Conclusion**

Affirmed in part, reversed in part, and remanded with instructions.

Shepard, C.J., Dickson, Rucker, and David, JJ., concur.
Sullivan, J., not participating.