Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 17 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**MICHAEL H. MICHMERHUIZEN**
**PATRICK G. MURPHY**
Barrett & McNagny, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES:

**JASON M. KUCHMAY**
Federoff Kuchmay, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MICHAEL M. and LANA S. ASHLEY, et al.,    )
                                          )
   Appellants-Petitioners,                )
                                          )
      vs.                              )    No. 02A03-1108-MI-340
                                          )
JEFFREY and HOLLY SPAW, et al.,           )
                                          )
   Appellees-Respondents.                 )

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Thomas J. Felts, Judge
The Honorable Craig J. Bobay, Magistrate
Cause No. 02C01-1108-MI-1178

**April 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Several back-lot owners in the Long Lake Park subdivision in LaGrange County ("the Back-lot Owners") filed a petition for relief with the Indiana Natural Resources Commission ("the Commission") seeking resolution of a riparian rights dispute between the back-lot owners and the owners of lots in Long Lake Park which had a direct view of the lake ("the Lake-view Owners"). After the Back-lot Owners received a favorable decision from the Commission, the Lake-view Owners filed a petition for judicial review in Allen Circuit Court. The trial court affirmed the Commission's decision. The Lake-view Owners appeal and present two issues for our review, which we restate as:

I.      Whether the trial court erred in affirming the Commission's conclusion that the Back-lot Owners' claim was not barred by the doctrine of laches; and

II.     Whether the trial court erred in affirming the Commission's conclusion that the Back-lot Owners did not abandon their riparian easement rights.

We affirm.

## Facts and Procedural History

The facts of this case are essentially the same as those recited in our recent opinion involving many of the same parties' dispute over title to the strip of land which separates the Lake-view Owners' lots from the lakeshore. As we explained in that case:

> The parties in this case all own lots in the Long Lake Park subdivision in LaGrange County. This subdivision was platted in 1932 by Lee Hartzell, who owned land adjacent to Big Long Lake. On June 12, 1932, Hartzell recorded the plat for Long Lake Park ("the Hartzell Plat"). The Hartzell Plat contained certain provisions concerning the use of Long Lake Park, specifically:
>
>> Each lot owner shall be entitled to an easement on the Lake Shore six feet in width for a boat landing which easement shall be in front of the block in which the lot is located and the easement shall bear the same number as the lot it is for and the easements shall be numbered consecutively from North to South.

2

The Hartzell Plat set out Long Lake Park as a series of blocks each comprised of several lots. None of the platted lots extend to the shore of Big Long Lake. Instead, located between the blocks and the lakeshore is a strip of land referred to on the Hartzell Plat as "the Indian Trail." There are also various drives located between the blocks. The Hartzell Plat provides that "all drives, alleys, and walks are for the use of the owners of the lots and their guests[.]"

The Plaintiffs in this case are all front-lot owners, whose lots are situated near the lake with only the Indian Trail separating their lots from the lakeshore. The Defendants are all back-lot owners who claim that their access to the lake would be impaired if the Plaintiffs prevailed in their claim of adverse possession of those parts of the Indian Trail in front of their respective lots and who claim the right to use the Indian Trail under the language of the Hartzell Plat. A map of the relevant portion of Long Lake Park is set forth below:



According to the language of the Plat, each lot owner had a six-foot easement in front of their respective block, running north-to-south. For example, in Block 7, the owner of Lot 65 had a six-foot easement starting at the lakeshore on the northern end of Block 7, with each subsequent lot owner having another six-foot easement directly to the south of the preceding easement. Despite these easements, over the intervening years, the front-lot owners built boat docks or piers on the shoreline immediately in front of their lots, and the back-lot owners typically built their boat docks on the areas of the shoreline that were located near the ends of the drives separating the blocks. The front-lot owners also built seawalls to prevent erosion to that part of the Indian Trail that was located directly between their lots and the lakeshore and cared for this area as part of their respective yards.

Altevogt v. Brand, 44A03-1106-MI-237, 2012 WL 868894 (Ind. Ct. App. Mar. 15, 2012) (record citations omitted) (footnotes omitted).[1]

In the present case, the Commission found that the usage of the shoreline in Long Lake Park was generally consistent with the language of the Plat, in that both the Back-lot Owners and Lake-view Owners typically placed their piers in front of the block where their lot was located or in front of a drive located adjacent to that block. But the Commission also found that the usage was not entirely consistent with the language of the Plat in that the Lake-view Owners typically placed their piers and boats in front of their lots, whereas the Back-lot owners, whose most direct access to the lakeshore was via the streets other than the Indian Trail, typically placed their piers at the ends of the drives they used to access the lake.

The present dispute arose in the spring of 2009, when certain Lake-view Owners sought to prohibit the Back-lot owners from placing piers in front of the Lake-view

---

[1] As we observed in Altevogt, the map included in that case was "a rough recreation of the maps included in the record before us, none of which are reproduced clearly enough to allow us to include them in this opinion," and was included "only as a visual aid to the reader." Altevogt, slip. op at 2.

4

Owners' lots by asserting the exclusive right to place piers in front of their respective Lake-view lots. As a result, the Back-lot Owners filed a petition with the Commission to determine the riparian rights of the parties.[2] On May 5, 2009, the Lake-view Owners in Blocks 7 and 8 filed a motion to intervene as respondents. On May 7, 2009, counsel appeared for the Back-lot Owners in Blocks 7 and 8. Subsequently, additional owners in Block 6 were joined to the action, and the Indiana Department of Natural Resources ("the DNR") was added as a third-party respondent. On December 18, 2009, the parties confirmed that, to the best of their knowledge, all owners of lots in Blocks 6, 7, and 8 of Long Lake Park had been served and made a party to the action.

On September 25, 2009, the Back-lot Owners filed a motion for summary judgment, arguing to the ALJ that the Plat granted an easement in the Indian Trail that also conveyed certain riparian rights. The ALJ held a summary judgment hearing on December 22, 2009, and on January 22, 2010, entered an interlocutory order granting partial summary judgment in favor of the Back-lot Owners and concluding that the Back-lot Owners were entitled to an easement in front of their respective blocks, that the boat landing easements were the same for all lot owners, and that the boat-landing easements were located in front of the lot owners' respective blocks, not at the end of the drives. The issues of the precise location of each lot owner's easement and whether the easements had been abandoned and/or were barred by laches was reserved for an evidentiary hearing. The ALJ held an evidentiary hearing on April 22, 2010, and on June 18, 2010, entered findings of fact and conclusions of law in favor of the Back-lot Owners.

---

[2] The petition was initially filed pro se by Jeffrey and Holly Spaw, who are among the Back-lot owners.

The Lake-view Owners then requested further review pursuant to the Indiana Administrative Orders and Procedures Act ("AOPA"). Following oral argument before the Commission's AOPA Committee, the Commission issued its final findings of fact and conclusions of law on July 28, 2010. This final order numbered forty-five pages and contained 155 paragraphs of findings and conclusions. The relevant portion of these findings and conclusions state as follows:

### II. FINAL ORDER

Paragraph (1) Each Lot owner in Block 6, Block 7, and Block 8 has a geographically unique easement on the shoreline or water line of Big Long Lake that is six feet wide. Subject to the regulatory authority of the Department of Natural Resources under IC 14-26-2 and 312 IAC 11-1 through IAC 11-5, the easement may be used for a boat landing, including the placement of a temporary pier. The easement is in front of the Block in which the Lot is located. Each individual easement shall bear the same number as the Lot it is for and shall be numbered consecutively from north to south.

Paragraph (2) The boundaries of the riparian zones for Lot 51 through 64 shall be delineated as set forth in Finding 94 through Finding 98.[3]

Paragraph (3) The boundaries of the riparian zones for Lot 65 through 97 shall be delineated as set forth in Finding 102 through 109.

Paragraph (4) A land surveyor, registered under IC 25-21.5 must perform a survey under IC 25-21-5 and IAC 1 to document and memorialize the boundaries of any easement and associated riparian zone, as described in Paragraph (1) through Paragraph (3), before a person may use the easement or place a structure in the associated riparian zone. In performing the survey, the land surveyor shall consult with the DNR's Division of Water.

Paragraph (5) The Department of Natural Resources may apply 312 IAC 11-3-4 as appropriate to accomplish the purpose of this Final Order.

---

[3] These findings define the boundary of the riparian zone for Lot 51 by extending "the northern boundary of Lot 56 . . . in a straight line across the Indian Trail, across the shoreline or water line of Big Long Lake, and into Big Long Lake for a reasonable distance." Appellant's App. p. 25. Then, to identify the mutual southern boundary for the boat landing for Lot 52, "a line parallel to and six feet south of the line [described above] shall be extended from the shoreline or water line and into Big Long Lake for a reasonable distance." Id. This process "shall repeat until the southern boundary of the line for the boat landing for Lot 64 is determined." Id. A similar process is set forth for Lots 65 through 97.

6

Paragraph (6)  No pier, boat station, platform, or similar structures shall be placed along Block 6, Block 7, Block 8 that is inconsistent with this Final Order.  A pier, boat station, platform, or similar structure which does not conform to this Final Order is unlawful.  This Final Order does not govern the placement of seawalls or the placement of structures landward of the shoreline or water line of Big Long Lake.

* * *

Paragraph (8)  The effectiveness of Paragraph (1) through Paragraph (6) of this Final Order is deferred until January 1, 2011.

Appellant's App. pp. 42-43.

On August 27, 2010, the Lake-view Owners filed a petition for judicial review in the trial court.[4]  The parties filed written briefs with the trial court, and the trial court heard oral argument on the matter on April 21, 2011.  By an order dated July 8, 2011, the trial court denied the petition for judicial review and affirmed the order of the Commission.  This appeal ensued.[5]

**Review of Agency Decision**

In an appeal involving a decision of an administrative agency, our standard of review is governed by the AOPA, and we are bound by the same standard of review as the trial court.  Dev. Servs. Alternatives, Inc. v. Ind. Family & Soc. Servs. Admin., 915

---

[4]  Before the trial court, the petitioner Lake-view Owners were: Michael and Lana Ashley, Lloyd and Karen Bickel, Carl and Margaret Mosser, Phillip and Karen Lake, Debra Ann Cozmas Parkison, Kathleen Smith (as trustee of the Kathleen Smith trust), Roger and Beverly Meyer, Page Liggett (as trustee of the Page and Carol Liggett trust), and Brian Smith.  The respondent Back-lot Owners were Jeffrey and Holly Spaw, David and Diana Jennings, Mark and Patricia Lorntz, David and Mary Remenschneider, Carol Ensley, Jennifer and Zachary Miller, Suzanne Wolpert, Gary Ward, Steven and Karen Ybarra, Thomas and Jennifer Stuck, Karen Norden, Scott Ensley (as representative of the estate of Velma Ensley), Ryan and Sarah Burtch, Roger and Melissa Selking, Paul and Mary Zawadzke, L. Dean and Edith Rodenbeck, John and Sylvia Gross, Lynn and Betty Fisher (as trustees of the Betty Fisher revocable trust), Dennis and Kara Allis, Pamela Ann Meeks, Karen Potts, Alan Macklin, Gregory King, and the DNR.

[5]  On appeal, counsel for the Appellees represents appellees David and Diana Jennings, Mark and Patricia Lorntz, David and Mary Remenschneider, Jeffrey and Holly Spaw, Gary and Nadene Ward, and Steven and Karen Ybarra.

7

N.E.2d 169, 176 (Ind. Ct. App. 2009), trans. denied. Although the General Assembly has granted courts the power to review the action of state government agencies taken pursuant to the AOPA, such power of judicial review is quite limited. Beaty Const., Inc. v. Bd. of Safety Review, 912 N.E.2d 824, 828 (Ind. Ct. App. 2009).

The reviewing court may neither try the case de novo nor substitute its judgment for that of the agency. Dev. Servs., 915 N.E.2d at 176 (citing Ind. Code § 4-21.5-5-11). Judicial review of disputed issues of fact must be confined to the agency record for the agency action. Id. We will not reweigh the evidence, and we give deference to the expertise of the administrative body and will reverse the agency's decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Id. (citing Ind. Code § 4-21.5-5-14(d)). A decision is arbitrary and capricious when it is made without any consideration of the facts and lacks any basis that could lead a reasonable person to make the same decision made by the administrative agency. Id. The burden of demonstrating the invalidity of an agency action is on the party asserting its invalidity. Beaty Const., 912 N.E.2d at 828. (citing Ind. Code § 4-21.5-5-14(a)).

## I. Laches

The Lake-view Owners first claim that the trial court erred in affirming the Commission's conclusion that the Back-lot Owners' petition was not barred by the doctrine of laches. Laches is an equitable defense that may be raised to stop a person

8

from asserting a claim that he would normally be entitled to assert. Ind. Real Estate Comm'n v. Ackman, 766 N.E.2d 1269, 1273 (Ind. Ct. App. 2002). The rationale behind the doctrine of laches is that a person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to assert his claim when this delay prejudices the person against whom he would assert it. Id.

To prevail in a defense of laches, the defendant must show: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. Richmond State Hosp. v. Brattain, 961 N.E.2d 1010, 1012 (Ind. 2012) (per curiam). "Despite this structured test, '[t]here is no fixed or definite rule for the application of the doctrine of laches.'" Id. at 1012-13 (quoting Grantham Realty Corp. v. Bowers, 215 Ind. 672, 686, 22 N.E.2d 832, 839 (1939)).

The question of laches is one to be determined by the court in the exercise of its sound discretion. Ackman, 766 N.E.2d at 1273. For a decision to be reversed on appeal, an abuse of discretion must be clearly demonstrated. Id. A trial court abuses its discretion only when its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

We further note that laches is an affirmative defense, and the party asserting this defense bears the burden of proof. Williams v. Rogier, 611 N.E.2d 189, 197 (Ind. Ct. App. 1993), disapproved of on other grounds by Fraley v. Minger, 829 N.E.2d 476 (Ind. 2005). Thus, when a party unsuccessfully asserts the defense of laches and appeals, that

9

party appeals from a negative judgment on that issue. Id. A negative judgment may be attacked only as being contrary to law. Id. We will reverse a negative judgment only if there is no evidence to support the judgment and we reach a definite and firm conviction that a mistake has been made. Id. Where the issue is tried before a court and not a jury, the judgment on that issue will be reversed only if it is clearly erroneous. Id. In determining whether a negative judgment is contrary to law, we neither reweigh evidence nor judge witness credibility. J.W. v. Hendricks Cnty. Office of Family & Children, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). Instead, we consider only the evidence most favorable to the prevailing party together with all reasonable inferences flowing therefrom. Id.

We will disturb a negative judgment as being contrary to law only if the evidence is without conflict and leads to but one conclusion, and the lower court has reached the opposite conclusion. See Lambert v. State, 743 N.E.2d 719, 726 (Ind. 2001); see also State v. Holmes, 728 N.E.2d 164, 169 (Ind. 2000) (noting that on review of a negative judgment, the question "is whether there is no way the court could have reached its decision.").

Here, the Lake-view Owners insist that, for decades, the Back-lot Owners never exercised their rights to place piers on the lakeshore in the manner described in the easement. We think this frames the issue too narrowly. It is undisputed that the Back-lot Owners exercised their rights under the easement to place piers and boat docks in the lake every year, but that they typically placed their piers at the end of the common drives as opposed to the north-to-south system based on the lot number based system described in

10

the Plat. The Back-lot Owners also note that, before the instant litigation, there was nothing physically demarking where the specific boat landing easements were located. And none of the lot owners were placing their boat landings in the precise manner set forth in the Plat. The Lake-view owners placed theirs directly in front of their lots, and the Back-lot Owners placed theirs at the ends of the common drives. Thus, all lot owners placed piers in the lake and did so pursuant to the easement granted in the Plat, but *none* of the lot owners exercised their easement rights in the precise manner set forth in the Plat.

Moreover, several of the Back-lot Owners purchased their lots relatively recently. For example, Mark and Patricia Lorntz purchased their lot in 2006, and Jeff and Holly Spaw purchased their lot in 2005. The instant litigation commenced in 2009, three to five years after these owners purchased their lots. We decline to say that this brief period constitutes an inexcusable delay. The Lake-view Owners claim that this should salvage only the claims of those lot owners who recently purchased their lots. We disagree. The entire boat-landing easement system described in the Plat is based on every lot owner in a given block having a boat-landing easement in front of that block. To apply this system piecemeal would make little sense.[6]

---

[6] In their reply brief, the Lake-view Owners argue that we should apply the adverse-possession notion of "tacking," and "tack" together successive periods of ownership, thus binding the present owners by the non-action of their predecessors in title. But as the Lake-view Owners themselves noted in their appellant's brief with regard to adverse possession and laches, "[t]he two doctrines are very distinct." Appellant's Br. at 28 n.5. Laches prevents a party from asserting a right, whereas adverse possession actually transfers title of the property in question.

The Lake-view Owners also claim that the Commission erred by concluding that laches should not apply because the proper parties were not joined in the action. Specifically, the Commission found:

> With respect to the portions of [the] Indian Trail which border the shoreline of Big Long Lake, and which are not within the portions of the shoreline earmarked for boat landings, the owners of all Lots in Big Long Lake are necessary parties in interest if their rights are to be foreclosed by laches. They are not parties. For this reason alone, the Commission cannot grant the relief sought by the respondents. In many respects, this aspect of the respondents' assertion of laches looks very much like one of adverse possession, over which the parties have stipulated the Commission has no jurisdiction. Regardless, necessary parties in interest have not been included here to apply laches.

Appellant's App. p. 76.

The Lake-view Owners argue that the Commission's ruling suggests that they had an obligation to join the other lot owners as parties and that, as respondents to the Back-lot Owners' action before the Commission, they had no such duty. But even if the Lake-view Owners had no duty to join the other lot owners to the action before the Commission, we cannot fault the Commission's decision not to apply an equitable doctrine that might impact the rights of other lot owners who were not parties. Although the Lake-view Owners were the respondents in the action before the Commission, they *were* the ones who asserted the affirmative defense of laches, and it was their burden to establish this affirmative defense. We cannot say that the Commission's consideration of the effect that a finding of laches might have on other non-parties was arbitrary or capricious.

12

Viewing only the evidence favorable to the Commission's decision, we cannot say that the Commission clearly erred by finding that laches did not bar the Back-lot Owners' claims. The evidence on this issue was not without conflict and did not lead to a conclusion opposite that reached by the Commission. See Lambert, 743 N.E.2d at 726.

## II. Abandonment

The Lake-view Owners also claim that the trial court erred in upholding the Commission's conclusion that the Back-lot Owners did not abandon their easement. An easement, whether acquired prescriptively by adverse use or expressly in writing, can be abandoned. Consol. Rail Corp., Inc. v. Lewellen, 682 N.E.2d 779, 783 (Ind. 1997). A complete discontinuance of all use of an easement with the intention thereby wholly to abandon it, constitutes such a surrender as will terminate the easement. Id. The intent to abandon the easement and put an end to it is a necessary element of such abandonment. Thus, mere proof of non-use for a number of years is insufficient to show an intention to abandon. Chickamauga Properties, Inc. v. Barnard, 853 N.E.2d 148, 154 (Ind. Ct. App. 2006).

Here, there was evidence from which the Commission could conclude that the Back-lot owners did not discontinue *all* use of their easement. Indeed, there was evidence that the Back-lot Owners continually used the easement to place piers in the lake yearly. The fact that the Back-lot Owners did not use the particular location called for in the Plat to place their boat landings does not constitute total abandonment of the entire easement. Nor does such use necessarily indicate an intent to totally abandon the

13

easement. Under the facts and circumstances of this case, the Commission's conclusion that the Back-lot Owners did not abandon the easement was not arbitrary and capricious.

The Commission's conclusions at issue were not arbitrary, capricious, an abuse of discretion or contrary to law.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.