NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 14, 2016[*]
Decided November 22, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 16-3317

| | |
|---|---|
| JARREN L. AUSTIN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | Fort Wayne Division |
| *v.* | |
| | No. 1:93-cv-217 |
| JOHN NIBLICK, | |
| *Defendant*, | William C. Lee, |
| | *Judge*. |
| CITY OF FORT WAYNE, | |
| *Intervenor-Appellee.* | |

**O R D E R**

---

[*] We have unanimously agreed to decide this case without oral argument, because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See Fed. R. App. P. 34(a)(2)(C). The new appeal has been assigned to the panel that handled Austin's earlier appeal, pursuant to Internal Operating Procedure 6(b).

This case had its origins in 1991, when officers from the Fort Wayne, Indiana, police force arrested Jarren Austin and allegedly beat him as they did so. In 1993, relying on 42 U.S.C. § 1983 and several state-law theories, Austin sued one of the arresting officers, John Niblick, as well as several other unnamed officers and the City of Fort Wayne. Austin later dismissed his claims against the unnamed officers and the city, leaving Niblick as the sole defendant. Niblick made no effort to defend, however, though nothing indicates that he was not properly served. In 1995 the district court awarded Austin a $16,998.36 default judgment against the absent officer. By that time, Niblick had moved to Florida. The record then goes silent until December 16, 2014, when Austin filed a *pro se* "Motion Requesting Extension of Time and Clarification on the Court's Prior Judgment and Order Dated September 8, 1995" in the U.S. district court for the Northern District of Indiana, which had entered the 1995 judgment. In essence, the motion asked the court to help Austin to collect on the nearly 20-year-old judgment against Niblick. After it caught wind of the litigation, the City of Fort Wayne intervened to defend against Austin's request that the City pay the judgment, with interest.

The district court denied Austin's motion, finding that Indiana law did not permit him to sue the City. On appeal, we rejected that rationale, noting that in substance Austin had instituted proceedings supplemental to the underlying litigation, as authorized by Federal Rule of Civil Procedure 69. *Austin v. Niblick*, 626 F. App'x 167 (7th Cir. 2015) (*Austin I*). We found that Indiana law did require the city to pay judgments against its employees, *id.* at 169–170, and thus held that the case had to be remanded for further proceedings. Mindful of the lengthy delay between the judgment and the collection proceedings, however, we pointedly added that "the district court may consider the timeliness of Austin's motion, given that he filed it 19 years after the judgment was issued." *Id.* at 171. On remand, the district court accepted that invitation and ruled that the doctrine of laches prevented Austin from enforcing his judgment against the city so late in the game. Austin has once again appealed.

Rule 69(a)(1) provides that the enforcement of money judgments "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." In other words, Rule 69 "adopts whatever procedures are followed by the state courts in which the collection is sought … unless there is an applicable federal statute expressly regulating the execution of judgments." *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (quoting *Maher v. Harris Trust & Sav. Bank*, 506 F.3d 560, 563 (7th Cir. 2007)). Thus while we are not bound to apply "every jot and tittle" of state procedural rules, in general we should conform Rule 69 proceedings to state law. *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 626–27 (7th Cir. 2013)

(quoting *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993)). In this case, there is no federal statute on point, and so we turn to Indiana law for guidance.

Laches is an equitable doctrine that permits courts to refuse to aid litigants who have slept on their rights. *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005). It applies "[i]ndependently of any statute of limitation," meaning that a claim can be barred even if the time for filing has not yet officially expired. *Id.* (quoting *Penn Mutual Life Ins. Co. v. Austin,* 168 U.S. 685, 698 (1898)). Thus even if Austin's claim is not strictly barred by Indiana's statute of limitations—an issue we do not reach—the district court was permitted nonetheless to conclude that it was foreclosed by laches. See *Austin I*, 626 F. App'x at 171 (noting split of Indiana authority on applicability of statute of limitations). Laches bars a plaintiff's claim if her opponent establishes "(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." *SMDfund*, 831 N.E.2d at 729. This test is applied flexibly. Indiana recognizes "no fixed or definite rule for the application of the doctrine of laches.'" *Richmond State Hosp. v. Brattain*, 961 N.E.2d 1010, 1012 (Ind. 2012) (quoting *Grantham Realty Corp. v. Bowers,* 22 N.E.2d 832, 839 (Ind. 1939)).

The district court acted well within the boundaries of its authority when it concluded that Austin's delay was inexcusable. He waited almost 20 years to enforce his judgment against the city. Nothing during that period prevented him from asserting his rights, and he cannot plead ignorance as Indiana charges him with knowledge of the law. *SMDfund*, 831 N.E.2d at 729 (Ind. 2005). There is no special dispensation for *pro se* litigants, and in any event it appears that Austin was represented by counsel for much of the relevant time. He may fault his lawyer for failing to bring this action sooner, but it is well established under Indiana and federal law that clients are accountable for their attorneys' conduct, even if that conduct was negligent. *Mirka v. Fairfield of America, Inc.*, 627 N.E.2d 449, 450 n. 1 (Ind. Ct. App. 1994); *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009).

The same logic governs the second part of the laches analysis. Austin acquiesced for nearly two decades to existing conditions. See *Hutchinson v. Spanierman*, 190 F.3d 815, 825–26 (7th Cir. 1999). The only evidence of action that he provides is a skimpy affidavit the district court found was not credible, and a demand letter sent to the city mere months before he initiated this litigation. That is not enough to outweigh 19 years of stasis. Prejudice, the final element, is also easy to find. Austin wants the city to pay not only the original award, but also well over $200,000 in interest. That sum greatly

exceeds the original judgment, and the increase is largely attributable to Austin's delay. This is so even taking into account the fact that an adjustment must be made before one can accurately express the 2016 value of 1995 dollars. The government's CPI Inflation Calculator indicates that $17,000 in 1995—the approximate amount of the default judgment—is equivalent to just $26,965 in 2016. See http://data.bls.gov/cgi-bin/cpicalc. pl?cost1=17000&year1=1995&year2=2016. This shows that Austin is asking for quite a bit more than he initially received. Moreover, as far as the city knew, Austin had simply abandoned this claim. From that perspective, these are all new demands. Indiana law does not permit litigants to wait in the wings while their claims increase in value. See, *e.g.*, *Brattain*, 961 N.E.2d at 1015; *Wagner v. Estate of Fox*, 717 N.E.2d 195, 204 (Ind. Ct. App. 1999). Indeed, this is precisely the type of prejudice that laches seeks to prevent. Equity aids the vigilant, not those who slumber on their rights. The district court reasonably decided that Austin, having slept for 19 years, may not wake up now.

The district court's order denying Austin's motion is AFFIRMED.